Chief Judge Breitel.
Petitioners appeal as of right (CPLB. 5601, subd. [b], par. 1) from a judgment by the Appellate Division dismissing two proceedings under CPLR article 78 challenging the constitutionality of certain provisions of the Emergency Dangerous Drug Control Act (L. 1973, ch. 603).
Petitioners stand indicted for drug felonies and are scheduled for trial before respondents, acting Supreme Court Justices, so designated by the Appellate Division, after their appointment by Governor Rockefeller to the Court of Claims. There are two groups of petitioners, each challenging on constitutional grounds the respondent acting Justices’ legal authority to preside at their felony trials. The Taylor group challenges the constitutionality of that portion of the legislation increasing the number of Judges sitting on the Court of Claims, the Governor’s appointment of the Judges, and the Appellate Division’s designation of those appointed as acting Supreme Court Justices. The Cullum group makes a similar challenge and, in addition, alleges that in requiring participation by the executive branch of government in proposing a plan for the efficient use of judicial resources, chapter 603 violates the constitutional doctrine of separation of powers.
Governor Rockefeller’s 1973 annual message to the Legislature called for stricter penalties for drug offenses and stringent limitations on acceptances of lesser pleas to higher crimes charged. The drug bill passed both houses of the Legislature and was signed into law by the Governor on June 11, 1973 (L. 1973, ch. 603). The bill amended section 140-a of the *362 Judiciary Law by increasing the number of Supreme Court Justices in each of the State’s 11 Judicial Districts, except for the First and Second Judicial Districts, increasing the number of Judges in certain other courts, and authorizing the appointment of up to 68 additional Judges of the Court of Claims, with nine-year terms as provided in the Constitution (art. VI, § 9). The legislation provided that the additional judgeships were not subject to succession upon expiration of the nine-year period or upon vacancies arising from any other cause.
It is not disputed that the purpose of the legislation was to provide additional Judges to preside over a widely-anticipated increase in dangerous drug felony prosecutions as the result of the new law. To date, the 16 additional Court of Claims Judges appointed have been assigned to criminal parts of the Supreme Court by the appropriate Appellate Division.
The Attorney-General contests petitioners’ standing to challenge the constitutionality of' the appointment and designation óf those Judges who are to preside at their trials. The challenged legislation directly affects petitioners by providing the legal basis for the Trial Judges’ authority to preside at their trials. Petitioners’ interest in the constitutionality of the legislation is therefore not abstract but personal, direct and substantial, conferring standing to challenge the respondents’ authority to preside at petitioners’ trials (see Schieffelin v. Komfort, 212 N. Y. 520, 530).
The Cullum claim regarding the statutory authority conferred upon the Commissioner of the Division of Criminal Justice Services is of a different kind. The legislation provides that the Commissioner, an executive appointee, along with the State Administrator of the Courts, a judicial appointee, are to prepare jointly a plan for effective and efficient use of existing judicial resources and those resources made available by the new legislation (L. 1973, ch. 603, § 1). This provision is challenged as violating the constitutional doctrine of separation of powers. The appellants are not directly affected by this provision to afford them standing to challenge its constitutionality (see St. Clair v. Yonkers Raceway, 13 N Y 2d 72, 76). Nor will the constitutional question presented affect the validity of any orders or judgments of the acting Supreme Court Justices to warrant *363 this court’s consideration in the absence of standing (compare Matter of Spillane v. Katz, 25 N Y 2d 34, 36).
Section 9 of article VI of the Constitution, provides that the Court of Claims “ shall consist of the eight judges now authorized by law, but the legislature may increase such number ”. The language of this provision is explicit and unambiguous in granting the Legislature power and, under long-established rules of construction, the court is generally precluded from looking elsewhere for its meaning and the scope of the power conferred (People v. Carroll, 3 N Y 2d 686, 689-690; see, also, Newell v. People, 7 N. Y. 9, 97).
The Legislature without express qualification by purpose, is authorized to increase the number of Court of Claims Judges (N. Y. Const., art. VI, § 9). It is of no legal or practical consequence that it set an outer limit of 68 new Judges rather than fixing the number at that figure. The Governor is limited in the number of Judges to be appointed and each appointment is subject to confirmation by the Senate as required by the Constitution (L. 1973, ch. 603, § 1; N. Y. Const., art. VI, § 9).
The Constitution provides for election of Supreme Court Justices by electors of the judicial district in which they are to serve (art. VI, § 6, subd. c) and further provides that in New York City the Supreme Court has “ exclusive jurisdiction over crimes prosecuted by indictment ” (art. VI, § 7, subd. a). Because of these provisions, petitioners argue that the Constitution guarantees to a person under indictment for a felony in New York City that the Trial Judge will be a properly elected Supreme Court Justice.
"While this argument has appeal it fails to conclude the issue. The same Constitution authorizes the temporary assignment of a Judge of the New York City Criminal Court (art. VI, § 26, subd. g) as well as a Judge of the Court of Claims (art. VI, § 26, subd. b) to the Supreme Court. There is nothing in the Constitution which precludes any Judge so assigned from sitting on a felony trial. On the contrary, the Constitution provides that “ [w]hile temporarily assigned pursuant to the provisions of [section 26], any judge or justice shall have the powers, duties and jurisdiction of a judge or justice of the court to which assigned ” (N. Y. Const., art. VI, § 26, subd. k). These provisions support the conclusion that, rather than providing *364 a defendant with a right to trial by an elected Judge, the constitutional provision requiring election of Supreme Court Justices is merely the method by which the State has decided to choose its regular Supreme Court Justices. Nothing, therefore, in the Constitution guarantees a defendant charged with a felony in New York City the right to be tried before an elected rather than an appointed acting Supreme Court Justice.
Because the Constitution authorizes only the temporary assignment of Court of Claims Judges, petitioners urge that the statutory device is invalid. Neither the Legislature nor the Governor had the power to assign any of the Court of Claims Judges to the Supreme Court. It is only the Appellate Division which has the power to assign to the Supreme Court a Judge of the Court of Claims (N. Y. Const., art. VI, § 26, subd. i). That same Appellate Division must determine whether additional Judges are necessary and which Judges should be assigned.
The Appellate Division order in the instant case designates the respondents to act as Supreme Court Justices in the criminal term “ until the further order of this Court.” The order does
X.
not specify that the assignment shall continue for the Judges’ nine-year terms, but rather, in effect, such assignment continues until the designating court determines their services are no longer necessary. This order is thus designed to accomplish the very purpose of the constitutional requirement of a temporary assignment. That is, there is a present certified need for additional Supreme Court Justices and when that need is no longer present the designating order would presumably be revoked. In this context, the indefiniteness of the assignment is equivalent to a temporary designation.
The Legislature agreed with the judicially-expressed concern that the stricter sentences and limitations on the acceptance of lesser pleas to higher crimes charged in the new drug law created an emergency need for additional Judges. There is generally a very strong presumption that “ the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation ” (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40). More specifically, the situation under consideration affirmatively demonstrates that the Legislature responded to a then gen *365 erally acknowledged need for more Judges to handle the consequences of the new drug law. Assuming that there were other effective methods by which to accomplish the same end, this court should not substitute its judgment for that of the Legislature in determining the particular method to meet a given need (Nettleton Co. v. Diamond, 27 N Y 2d 182, 194; see, also, Wasmuth v. Allen, 14 N Y 2d 391, 398).
Petitioners have cogently presented the view that the device used to increase the number of Judges to try felony cases has the effect of minimizing whatever purpose is made evident in the Constitution to provide for an elective Supreme Court to try such cases, except in exigent and temporary circumstances. Nevertheless, this cross-working of purposes is not equivalent to an ambiguity or conflict in the grant of constitutional powers which requires a court to look beyond the literal language and narrow or restrict the otherwise unqualified grant of power, present in this case.
Petitioners particularly urge upon the court the holding and reasoning in People ex rel. Jackson v. Potter (47 N. Y. 375), a case which certainly supports the proposition that in construing a constitutional provision involving a grant of executive or legislative power, all relevant parts of the Constitution must be considered. The reasoning is unexceptionable. In that case, however, unlike this case, the court was confronted with the need to reconcile two inconsistent provisions both of which could not have been accorded literal effect in the fact situation there presented. Indeed, an intolerable mischief would have been worked by the literal application of one provision while ignoring the other. There was therefore a patent conflict of purpose which would have produced an anomalous result (compare, however, People v. Carroll, 3 N Y 2d 686, 689-690, supra). Consequently, the court was required to reconcile the provisions which could only be accomplished by an extrinsic examination of purpose, effect, and contemporaneous statutes. Moreover, the present case involves determination of the constitutionality of a statute, an aspect not present in the Jachson case.
Finally, petitioners’ contention that the acting Supreme Court Justices are likely to be partial or subject to improper executive influence is unacceptable. Given the validity of the statute, the argument becomes irrelevant.
*366 The Legislature exercised its constitutional power and expanded the possible number of Judges on the Court of Claims; the Governor exercised his constitutional power and appointed 16 Judges of the Court of Claims; and the Appellate Division exercised its constitutional power and designated some of these Judges to act as Supreme Court Justices. There is no constitutional infirmity in the actions of any of the three branches of government.
The judgments of the Appellate Division should be affirmed.