Gabrielli, J.
(concurring in result only). There are few principles more deeply rooted in Anglo-American jurispru *369 dence than that "it would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow-citizens” (Blackstone, Book 4, 167, cited in Doolittle v Supervisors of Broome County, 18 NY 155, 160). The Doolittle decision solidified this into the law of New York almost three generations before the United States Supreme Court applied the same reasoning at the Federal level (Massachusetts v Mellon, 262 US 447; Fairchild v Hughes, 258 US 126); and this rule has been steadily and consistently applied in New York (Matter of Taylor v Sise, 33 NY2d 357; Hidley v Rockefeller, 28 NY2d 439; Matter of Posner v Rockefeller, 26 NY2d 970; St. Clair v Yonkers Raceway, 13 NY2d 72; Schieffelin v Komfort, 212 NY 520; Roosevelt v Draper, 23 NY 318; Doolittle v Supervisors of Broome County, 18 NY 155, supra), as well as by the Federal courts (Socialist Labor Party v Gilligan, 406 US 583; Massachusetts v Mellon, 262 US 447, supra; Fairchild v Hughes, 258 US 126, supra).
In dealing with the "taxpayer’s” suit, we are looking at a very narrow area. We are not concerned with the sort of action in which the plaintiffs can show no damage at all, not even damage shared by all other taxpayers (Boyle v Landry, 401 US 77); we are not concerned with the "friendly” suit or the suit brought merely for the purpose of seeking an "advisory” opinion (Muskrat v United States, 219 US 346); nor are we investigating the ever-widening scope of permissible standing in suits challenging administrative action (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1; Matter of Burke v Sugarman, 35 NY2d 39; Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416; United States v SCRAP, 412 US 669; Data Processing Serv. v Camp, 397 US 150).
The majority here has chosen suddenly to break the venerable rule of pure "taxpayer” standing, and to open wide the gates for taxpayer suits, apparently without limitation or guide. As I read the majority opinion, henceforth any person may sue directly members of the Legislature on a challenge of unconstitutionality to any statute or rule made by that body that has to do with the expenditure of funds. Does this mean, for example that that part of Matter of Taylor v Sise (33 NY2d 357, 362-363, supra) in which six of the seven members of this court agreed that criminal defendants had no standing to challenge an aspect of a statute not directly affecting them, *370 but nevertheless indirectly involving the expenditure of funds, would now be decided differently? It might also be asked — is the holding of the majority intended to allow the courts to render "advisory” opinions in "friendly” suits, or must there continue to be a "justiciable” and not an "abstract” issue involved? If the latter, we might also inquire whether the subtle distinctions between "standing” and "justiciability” have been made. Furthermore, can a disgruntled legislator now bring suit to "test” a statute with which he is not in favor before the statute has even become effective or been brought to bear on those for whom its application was intended? If so, it would seem that the judicial branch has become an essential tool in the supervision of another branch of government despite Judge Fuld’s attempt to argue otherwise in his dissent in St. Clair v Yonkers Raceway (13 NY2d 72, 80, supra).
That dissent apparently furnishes the cornerstone for the majority opinion in this case. It seems to me that more than the principle of stare decisis has been instrumental in perpetuating the Blackstone, Doolittle, St. Clair rule down to the present. Certainly, the unknown ramifications and seemingly limitless scope opened up by the proposal in the St. Clair dissent, adopted today by the majority, have kept intact this last protection against any nuisance or crackpot litigation. Even a later dissent (apparently also relied on by the majority here) in Hidley v Rockefeller (28 NY2d 439, supra) proceeded on the ground that the plaintiffs had, in fact, been directly aggrieved and that their particular interest (p 443) "is readily distinguishable from the interest shared by taxpayers generally (see St. Clair v Yonkers Raceway, 13 NY2d 72; Matter of Posner v Rockefeller, 26 NY2d 970)”.
The complicated and far-reaching aspects of the standing problem have been inadequately briefed and argued in this case. Beyond that, we might be lacking in caution if we were to wipe away all standing requirements without treating such closely related problems as "advisory opinions”, "justiciability”, "ripeness”, etc. I am of the firm opinion, moreover, that this is an area best dealt with by legislation much the same as was done in the instance of the class action (see Moore v Metropolitan Life Ins. Co., 33 NY2d 304, 313; L 1975, ch 207 [eff Sept. 1, 1975]). Under properly drawn and thought out legislation reasonable limitations could be implemented to prevent litigation from running riot. For instance: "[Objections to the granting of standing [to Federal taxpayers] have *371 been the sensitive nature of many federal appropriations, especially those for defense and foreign aid, and the fear of too many suits with attendant inconvenience in the daily affairs of government. However, the former objection can be met by denying standing as to expenditures in those spheres, and the fear of opening the floodgates of litigation may be minimized by making the taxpayer-citizen pay the government’s costs of litigation in cases of frivolous constitutional claims.” (Note, 77 Harv L Rev 1358-1359). Such appropriate provisions could be drawn in by proper legislation.
In his dissent in St. Clair, Judge Fuld found it significant that under section 51 of the General Municipal Law, taxpayers can challenge local governmental action. I find it significant also, but for the reason that it is a detailed statute prescribing, inter alia, for the posting of a suitable bond as a prerequisite to bringing suit. Significant also is the fact that it was the Legislature which acted to revise the common-law rule, not the court.
In short, the decision of the majority on the standing question in this case would seem to be precipitate, leaving too many unsolved problems which present situations that must be resolved with meticulous care, well outside the pale of judicial authority; and I am unable to join them in a venture leaving so many loose ends.
Chief Judge Breitel and Judges Jasen, Wachtler and Fuchsberg concur with Judge Jones; Judge Gabrielu concurs in result only in a separate opinion; Judge Cooke taking no part.
Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.