SIMON KATZ, Doing Business as ELMHURST MANOR HOME FOR ADULTS, et al., Appellants, v BERNARD SHAPIRO, as Executive Director of the Board of Social Welfare of the State of New York, et al., Respondents.

Third Department, April 27, 1978

APPEARANCES OF COUNSEL

*Austrian, Lance & Stewart, P. C. (Julius J. Rosen* and *Keith A. Taylor* of counsel), for appellants.

*Louis J. Lefkowtiz, Attorney-General (Clifford A. Royael* and *Jean M. Coon* of counsel), for respondents.

## OPINION OF THE COURT

STALEY, JR., J.

Petitioners are duly licensed operators of private proprietary homes for adults (PPHA) as defined in subdivision 26 of section 2 of the Social Services Law which provide suitable care, for compensation and profit, to persons who, though not

requiring medical or nursing care, are in such condition by reason of their age, infirmities or disabilities as to require, in addition to lodging and board, the services of attendants to assure their safety and comfort, and to enable them to be bathed, dressed, fed or to move about.

Pursuant to the provisions of subdivision 9 of section 758 of the Executive Law, effective October 1, 1976, each PPHA with a capacity of more than four persons was required to file an annual financial statement with the State Board of Social Welfare within 90 days after the close of its fiscal year upon forms prescribed by the board. This subdivision was repealed, effective October 1, 1977, and, in its place, subdivision 5 of section 461-b of the Social Services Law was enacted, effective October 1, 1977, which requires the filing of annual financial statements with the State Department of Social Services. The financial statements involved here relate to the requirements provided by subdivision 9 of section 758 of the Executive Law.

All residents of PPHA who are eligible to receive supplemental security income benefits receive aid from New York State through that program for the purpose of paying for their residential care (Social Services Law, § 209, subd 2, par [d]).

A hearing on the issues was held at Supreme Court, Trial Term, Albany County on September 26, 1977 at which time the parties stipulated that PPHA are not in receipt of or eligible to receive public funds within the meaning of section 2 of article XVII of the New York State Constitution, and that there are no significant differences between PPHA and non-profit facilities. At the hearing, the court was informed that the respondents were revising the annual financial report forms which were completed on September 30, 1977. The court made no finding as to the relationship between the financial data sought in the form prepared by the board and the health, safety and welfare of the residents of PPHA, but concluded that petitioners had failed to establish the unconstitutionality of subdivision 9 of section 758 of the Executive Law.

Petitioners' main contentions are that the Board of Social Welfare is precluded by section 2 of article XVII of the New York State Constitution from requiring PPHA to prepare and submit annual financial reports; that the provisions of subdivision 9 of section 758 of the Executive Law deny petitioners' right to equal protection of the laws; and that the unreasonable costs compelled by the requirement to prepare annual

financial reports constitute an arbitrary and capricious interference with petitioners' right to conduct its business in violation of their due process rights.

Article XVII of the New York State Constitution provides for Social Welfare and section 2 thereof states, in part, as follows:

"§ 2. [State board of social welfare; powers and duties.] The state board of social welfare shall be continued. It shall visit and inspect, or cause to be visited and inspected by members of its staff, all public and private institutions, whether state, county, municipal, incorporated or not incorporated, which are in receipt of public funds and which are of a charitable, eleemosynary, correctional or reformatory character. * * * As to institutions, whether incorporated or not incorporated, having inmates, but not in receipt of public funds, which are of a charitable, eleemosynary, correctional or reformatory character, and agencies, whether incorporated or not incorporated, not in receipt of public funds, which exercise custody of dependent, neglected or delinquent children, the state board of social welfare shall make inspections, or cause inspections to be made by members of its staff, but solely as to matters directly affecting the health, safety, treatment and training of their inmates, or of the children under their custody."

Petitioners argue that, since they receive no public funds and do not qualify as charitable, eleemosynary, correctional or reformatory institutions, they are not subject to regulation by the State Board of Social Welfare or the Department of Social Services, and the State Constitution empowers the board to visit and inspect all institutions which are not in receipt of public funds which are of a charitable, eleemosynary, correctional or reformatory character, but solely as to matters directly affecting the health, safety and treatment and training of their inmates. They thus contend that if there is any power in the board to regulate PPHA, it must be derived from section 2 of article XVII of the State Constitution, and they do not come within the terms of that section.

In *State of New York v Hudson Home for Aged* (86 Misc 2d 1063, 1066, affd 62 AD2d 1121) the Special Term rejected the argument that section 2 of article XVII of the New York State Constitution limits the power of the board to visit, inspect and supervise homes for the aged not in receipt of public funds, stating as follows: "Section 2 of article XVII, rather than limiting the powers of the State Board of

Social Welfare, affirms the right of the board to properly exercise its inherent police powers to further regulate the operation of homes for the aged such as defendant's. The owner of private property does not acquire immunity against the valid exercise of the police power. We are dealing here with one of the most essential powers of government; one that is the least limitable. It may, indeed, seem harsh in its exercise and it usually is on some individual property owner, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. All property is held subject to the right of the State reasonably to regulate its use under the police power in order to secure the general safety and public welfare, especially of our aged and senior citizens in view of the recent public disclosures of abuses in nursing homes and homes for senior citizens."

It is further provided in section 2 of article XVII of the State Constitution as follows: "Subject to the control of the legislature and pursuant to the procedure prescribed by general law, the state board of social welfare may make rules and regulations, not inconsistent with this constitution, with respect to all the functions, powers and duties with which the department and state board of social welfare are herein or shall be charged."

In *Matter of Kupferman v New York State Bd. of Social Welfare* (60 AD2d 674, 675), this court rejected a challenge by PPHA to a regulation of the board upon the ground that the board had no jurisdiction under section 2 of article XVII to regulate PPHA, stating: "[W]e conclude that the regulation was well within the powers of the board to make". Insofar as section 758 of the Executive Law concerns the health, safety and welfare of the residents of PPHA, it was within the power of the Legislature to enact the same, and charge the Board of Social Welfare with the duties thereunder.

The concern of the State for the general safety and welfare of all its citizens, particularly the elderly, provides sufficient reason for the enactment of subdivision 9 of section 758 of the Executive Law. As the trial court so cogently stated: "As long as a statute is not inconsistent with those specific provisions of the State Constitution it may be broader under the police powers of the State * * *. The statute [Executive Law, § 758, subd 9] must, therefore, be tested constitutionally under the police power of the State and its concern with the general safety and welfare of all citizens, especially the aged. * * * It

is reasonable for Legislature to prescribe financial reporting for private adult homes that do not receive public funds, if for no other reason than to assure that such private enterprise does not profit unduly at the expense of the elderly. Charitable homes are by their nature not so considered. In requiring all private proprietary homes to report, the equal protection clause is not violated."

■ The enactment of subdivison 9 of section 758 of the Executive Law was not precluded by or in violation of the provisions of section 2 of article XVII of the State Constitution.

Since the statute specifically requires only PPHA to submit an annual financial statement, and by virtue of the parties' stipulations, it is apparent that there are nonprofit facilities for adults which provide identical services and that there are no operational differences between these facilities and PPHA, petitioners argue they have been singled out for special treatment for which there is no rational basis, and they have, therefore, been denied their right to equal protection.

The courts have held that there is a strong presumption of constitutionality favoring a statute duly enacted, and have imposed a heavy burden of establishing unconstitutionality beyond a reasonable doubt upon those challenging such a statute (*Nik-O-Lok Co. v Carey*, 52 AD2d 375, affd 40 NY2d 1089).

The equal protection clause does not require that every State regulatory statute apply to all in the same business (*Morey v Doud*, 354 US 457, 465), but distinctions that are entirely arbitrary are not to be condoned (*Smith v Cahoon*, 283 US 553). Applying these general principles, the question presented is whether petitioners have carried their burden of establishing that the distinction between PPHA and similar nonprofit facilities for financial reporting purposes is entirely arbitrary and has no conceivable grounds to justify it.

Respondents argue that the very nature of proprietary facilities and their profit making motivation justify the distinction. Thus, the financial data required is necessary to determine whether essential services are being sacrificed to create profits or whether residents are being overcharged, resulting in excessive profits. Since there is no profit making motivation involved in the not-for-profit facilities, these problems do not arise, and the distinction, therefore, has some basis.

■ It seems undisputed that there is a rational basis for requiring congregate care facilities to submit financial data. The fact that the Legislature has chosen to require only proprietary facilities to do so does not automatically result in a violation of the equal protection clause.

As stated in *Matter of Dorn "HH" v Lawrence "II"* (31 NY2d 154, 158): "It is fundamental, of course, that the Legislature may classify persons for purposes of legislation without infringement of the equal protection guarantee, and that its discretion in this regard is broad, and will not be disturbed if any state of facts can reasonably be conceived to sustain its classification * * * or even if the classification be fairly debatable * * * provided only it shall not be palpably arbitrary". Petitioners' allegations are insufficient to establish that the classification created by the legislation in question is palpably arbitrary.

■ Petitioners challenge the statute on due process grounds, contending that unreasonable costs and staff necessitated by the reporting requirement constitute an arbitrary and unreasonable interference with private business. The public safety, public health and public welfare are all legitimate objects of the police power and are broadly inclusive *(Yonkers Community Dev. Agency v Morris,* 37 NY2d 478). To determine whether a piece of legislation is a valid exercise of the police power, there must be "some fair, just and reasonable connection between [the legislation] and the promotion of the health, comfort, safety and welfare of society" *(Montgomery v Daniels,* 38 NY2d 41, 54). The regulation of businesses engaged in providing lodging, food, recreation and personal aid to the aged is well within the definition of police power, and the reporting requirement has a fair, just and reasonable relationship to the regulation of those businesses. As a general rule, "[t]he police power is 'the least limitable of the powers of government'" *(New York State Thruway Auth. v Ashley Motor Ct.,* 10 NY2d 151, 157). The regulation of the business conducted by petitioners is within the power of the State and the requirement of annual financial statements is reasonably suited to that regulation. In addition, even if it could be shown that there were other effective methods for accomplishing the regulation of petitioners' business, this court should not substitute its judgment for that of the Legislature *(Matter of Taylor v Sise,* 33 NY2d 357).

The determination that the provisions of subdivision 9 of

section 758 of the Executive Law are constitutional applies equally as well to the present provisions of subdivision 5 of section 461-b of the Social Services Law. The other arguments presented by petitioners have been considered, and are held to be without merit.

The judgment should be affirmed, without costs.

SWEENEY, J. P., KANE, LARKIN and MIKOLL, JJ., concur.

Judgment affirmed, without costs.