OPINION OF THE COURT
Anne G. Feldman, J.
Defendant moves to preclude the People from seeking the death penalty on the ground that the pool of Judges named to preside over capital cases in Kings County does not represent a fair cross-section of the community.[1] Specifically, defendant claims that the practice of assigning Judges of the Court of Claims and the New York City Civil and Criminal Courts to serve as Acting Supreme Court Justices coupled with the State Legislature’s failure to designate for election in the Second Judicial District the maximum number of Supreme Court Justices permitted by the State Constitution, illegally dilutes the voting strength of the minority community in Kings County, in violation of section 2 of the Voting Rights Act of 1965 (42 USC *156 § 1973), the 15th Amendment to .the United States Constitution, and article II, § 1 of the New York State Constitution.[2]
ELECTED AND ACTING SUPREME COURT JUSTICES
Article VI, § 6 (c) of the New York State Constitution provides that the Justices of the Supreme Court shall be chosen by the electors of the judicial districts in which they serve. Article VI, § 6 (d) allows the Legislature to increase the number of Supreme Court Justices in any judicial district up to a maximum of one Justice per 50,000 people. Pursuant to this constitutional scheme, the Legislature has designated 52 Supreme Court seats for the Second Judicial District which includes Kings and Richmond Counties (see, Judiciary Law § 140-a). Given the current population of the Second Judicial District, this is less than the maximum number authorized under article VI, § 6 (d).
Article VI, § 9 of the State Constitution provides that the Court of Claims shall consist of eight Judges appointed by the Governor and that the Legislature may increase that number. Article VI, § 26 (b) of the State Constitution authorizes the temporary assignment of Court of Claims Judges to the Supreme Court. In 1973, the Legislature enacted the Emergency Dangerous Drug Control Act (L 1973, ch 603) which authorized the appointment of up to 68 additional Court of Claims Judges. Currently, there are approximately 12 Court of Claims Judges assigned to the Second Judicial District as Acting Supreme Court Justices. Such assignments are made by the Chief Administrator pursuant to article VI, § 26 (i) and article VI, § 28 of the State Constitution.
In addition to Court of Claims Judges, the State Constitution also authorizes the temporary assignment of New York City Criminal and Civil Court Judges to the Supreme Court (NY Const, art VI, § 26 [g]). These assignments are also made by the Chief Administrator (NY Const, art VI, § 26 [i]). Moreover, under article VI, § 26 (k) of the State Constitution, both Court of Claims Judges and lower court Judges temporarily assigned as Acting Supreme Court Justices have the power, duties, and jurisdiction of an elected Supreme Court Justice.
*157 STATISTICAL ANALYSIS
In support of his motion, defendant has submitted a statistical analysis comparing the racial composition of the population of Kings County, with the racial composition of the acting and elected Criminal Term Justices of the Kings County Supreme Court. This analysis indicates that as of the 1990 census, racial minorities including African-Americans, Hispanics, and Asians comprised approximately 60% of the population of Kings County. This analysis further indicates that as of March 1997, there were 52 acting and elected Supreme Court Justices in Kings County assigned to the Criminal Term. Of this number, 21 Justices were elected while 31 were Judges of other courts appointed as Acting Justices. According to defendant’s statistics, 10 out of the 21 elected Justices were minority group members (47.6%) while only two out of the 31 Acting Justices were members of a minority group (6.5%). Of the eight Justices selected from this allegedly tainted pool to preside over capital cases in Kings County, five are elected Justices and three are acting Justices. Two out of the five elected Justices are African-Americans while none of the three acting Justices are minorities.
Extrapolating from these numbers, defendant maintains that the system of appointing Acting Supreme Court Justices diminished the over-all pool of potential capital case Judges in Kings County from one that is nearly 50% minority to one that is only 23% minority. Defendant also claims that, because members of minority groups in Kings County are politically cohesive and historically vote as a block, the process of appointing acting Supreme Court Justices to meet case load requirements instead of increasing the number of elected Supreme Court seats, illegally dilutes the voting strength of the minority community in Kings County as well as the other counties in New York City.
CLAIMS UNDER THE VOTING RIGHTS ACT AND THE 15TH AMENDMENT
Defendant claims that the practice of appointing Judges of other courts as Acting Supreme Court Justices violates his rights under the 15th Amendment to the United States Constitution and section 2 of the Voting Rights Act (42 USC § 1973), which was enacted to enforce the 15th Amendment (see, United States v Mississippi, 380 US 128, 138). The Voting Rights Act provides that “[t]he district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this sec *158 tion” (42 USC § 1973j [f]).[3] Therefore, this court is not the appropriate forum in which to challenge alleged violations of the 15th Amendment and the Voting Rights Act.
In any event defendant lacks standing to challenge the process of appointing Acting Supreme Court Justices based upon alleged violations of the Voting Rights Act. Under the Voting Rights Act, standing is limited to the Attorney-General and private litigants “ ‘seeking] judicial enforcement of the prohibition’ against the infringement of the right to vote on account of race” (Roberts v Wamser, 883 F2d 617, 621 [8th Cir 1989], citing Allen v State Bd. of Elections, 393 US 544, 557). Thus, a defeated candidate for public office whose goal is to change the outcome of an election lacks standing to assert claims under the Voting Rights Act even though the ultimate relief sought by the candidate may serve the interests of voters (see, Roberts v Wamser, supra). Clearly defendant who seeks to invoke the Voting Rights Act as a criminal defendant attempting to avoid a possible death sentence cannot be viewed as a private litigant attempting to protect his right to vote. Accordingly, he lacks standing to assert claims under the Voting Rights Act (see, Randall v State, 875 SW2d 43 [Tex]).[4] Indeed, the fact that the enforcement provisions of the Voting Rights Act, which authorize fines, injunctive relief, and imprisonment, fail to provide for immunization from criminal prosecution or protection from certain types of punishment is further indication that the Voting Rights Act is inapplicable under the present circumstances (see, 42 USC § 1973j [a]-[d]).
CLAIMS UNDER THE NEW YORK STATE CONSTITUTION
Defendant claims that the process of appointing Acting Supreme Court Justices is inconsistent with the State constitutional provision providing for the popular election of Supreme Court Justices (NY Const, art VI, § 6 [c]). As a result, defen *159 dant claims that the appointment of Acting Supreme Court Justices violates his rights under article II, § 1 of the State Constitution which provides that, “[e]very citizen shall be entitled to vote at every election for all officers elected by the people and upon all questions submitted to the vote of the people”.
Defendant is correct in stating that article VI, § 6 (c) of the State Constitution provides that Supreme Court Justices are to be chosen by the electors of the judicial district in which they serve. However, the same article provides that Judges of the Court of Claims and the New York City Civil and Criminal Courts may be temporarily assigned to the Supreme Court in any judicial district and such Judges have the same powers, duties and jurisdiction as an elected Supreme Court Justice (NY Const, art VI, § 26 [b], [g], [k]). To the extent that there is a “cross-working of purposes [between NY Const, art VI, § 6 (c) and § 26 (b), (g), (k)] [it] is not equivalent to an ambiguity or conflict in the grant of constitutional powers which requires a court to look beyond the literal language and narrow or restrict the otherwise unqualified grant of power, present in this case” (Matter of Taylor v Sise, 33 NY2d 357, 365). In short, “nothing in the Constitution * * * precludes any Judge [assigned pursuant to NY Const, art VI, § 26] from sitting on a felony trial” (supra, at 363). Therefore there is no merit to defendant’s claim that the appointment of Acting Supreme Court Justices specifically authorized by article VI, § 26 of the State Constitution, violates his rights under article II, § 1 or any other section of the State Constitution so as to preclude the People from seeking the death penalty.
Accordingly, defendant’s motion is denied.

. Defendant also moved for additional time to supplement his motion based upon information he demanded from the Office of Court Administration pursuant to the Freedom of Information Law (Public Officers Law art 6) but which had not yet been received. In his January 12, 1998 affirmation in reply however, defendant stated, “[ajlthough the defense has still not received all the information requested from the Office of Court Administration * * * we have completed our own analysis of the impact of Acting Supreme Court Judge appointments on the judges assigned to the Supreme Court Criminal Term in Kings County.” (Defendant’s Jan. 12, 1998 reply affirmation j| 6.) Accordingly, the issue of whether defendant is entitled to additional time to supplement his motion is moot.

. Defendant’s motion contains a long list of constitutional and statutory rights upon which he purportedly relies. However, the only claims addressed in the body of defendant’s motion relate to the 15th Amendment, the Voting Rights Act, and article II, § 1 of the New York State Constitution.

. To date, no Federal court has ruled on the issue of whether New York’s judicial election system or the appointment of Acting Supreme Court Justices violates section 2 of the Voting Rights Act, although there are currently two cases pending before Judge Sprizzo in the Southern District on these issues (Franz v Pataki; Farrell v Pataki).

. While there do not appear to be any reported New York cases where a criminal defendant prior to conviction challenged the practice of appointing acting Supreme Court Justices under Federal law, in a postconviction situation it has been held that such defendants lack standing to challenge this practice on the grounds that Acting Justices are de facto Supreme Court Justices (see, People v Campos, 239 AD2d 185; see also, People v Scully, 110 AD2d 733).