OPINION OF THE COURT Steven Hornstein, J. Relevant Procedural History Defendant is charged with three counts of robbery in the first degree (see Penal Law § 160.15 [1], [2], [3]) and related charges. The accusatory instrument, a felony complaint, alleges that on July 4, 2017, the defendant, while acting in concert with codefendant Roberts and several unapprehended individuals, removed property from the complainant’s taxi, handed that property to another and then joined Roberts and others in striking the complainant. The defendant, in both oral and videotaped statements, denied participation in and presence at the alleged robbery. The codefendant, in oral statements, denied that there was a robbery, claimed that he acted in self-defense after being struck by the complainant with a baton and stated that his girlfriend, the defendant, “didn’t do anything.” On July 18, 2017, the defense sought a “so-ordered” subpoena from the court directing the New York City Police Department (NYPD) to produce footage from surveillance cameras located at and near the incident site that were owned and operated by the NYPD. The subpoena requested: “Any and all surveillance video recordings from July 4, 2017 between 2:35 pm and 4:35 pm from the outdoor cameras located at 1630 and 1635 East 174th Street. Additionally, any and all surveillance video recordings from inside the lobby and elevator at 1635 East 174th Street from July 4, 2017 between 2:35 pm and 4:35 pm.” Included with the subpoena were: (1) notices, dated July 12, 2017, advising the NYPD and the Bronx District Attorney’s Office (BXDA) that the defense would be applying for a subpoena duces tecum on July 18, 2017, in Part FB, a felony waiver part; (2) an email from a representative of the New York City Housing Authority (NYCHA) that on-site surveillance cameras at the incident location were maintained by the NYPD’s Video Interactive Patrol Enhanced Response Unit (VIPER); and (3) an affirmation stating: “Here, Ms. Swygert is accused of participating in a robbery and assault on a public street and sidewalk located at 1635 East 174th Street. Ms. Swygert, however, did not participate in such an incident and was instead inside her home located at 1635 East 174th Street. Thus, the video will absolutely exonerate Ms. Swygert as the video will show that she did not participate . . . and that she was inside when the robbery occurred” (see ¶ 6). “Thus, in order to defend herself. . . Mr. [sic] Swy-gert needs the production, in advance of trial . . . [of] the surveillance video . . . Ms. Swygert needs the video now to effectuate her right to present evidence to the Grand Jury and to preserve this video for trial” (see ¶ 7). “This video exists and is essential to the defense. The defense has sent an investigator to the scene and the investigator determined that cameras . . . will show the robbery so those videos are necessary and . . . since Ms. Swygert was home inside 1635 East 174th Street at the time of the robbery the defense . . . requests all lobby and elevator cameras from her building as well as that video will show that she did not arrive at the scene until after the robbery was committed” (see ¶ 8). The defense further noted: “[T]he buildings referenced . . . are NYCHA buildings but this subpoena is addressed to the NYPD. NYPD is the correct party . . . because NYCHA has informed the defense . . . the cameras . . . belong to NYPD Viper” (see ¶ 9). “The NYPD periodically deletes videos so waiting until after the District Attorney makes a determination regarding when to present this case to a Grand Jury will be too late as the video will be deleted” (see ¶ 7). The court, aware of the BXDA’s long-standing position that the defense is not entitled to a pre-indictment, so-ordered subpoena to obtain videotape footage, suggested that the defense and prosecution attempt to resolve disclosure issues related to the video without court intervention. On July 19, 2017, the defense, noting efforts to contact the assigned Assistant were unsuccessful, submitted a letter requesting advancement of the case to July 20, 2017, for an “on-the-record decision . . . regarding [his] application for a subpoena.” The letter referred to the defendant’s right to compulsory process under federal and state law, provisions contained in article 610 of the Criminal Procedure Law, and counsel’s professional responsibility to secure the video. On July 20, 2017, the defense informed the court that the footage sought would be destroyed if not subpoenaed. The court instructed the Part Assistant to have a supervisor appear to discuss the matter. Upon arrival, the supervisor informed the court that the Assistant assigned to the case was on vacation, that review of the case file indicated that video footage had been ordered and that the People would comply with their discovery obligations. Notably, the People could not confirm that the specific video, for the specific times requested by the defense, had been ordered. The defense, noting the crucial nature of the videotape, argued that the People’s assurances were inadequate and asked the court to sign the “so-ordered” subpoena to ensure preservation. The court signed the subpoena and marked it for in camera inspection. On August 2, 2017, the People filed and served a motion to quash the subpoena. Citing Criminal Procedure Law § 610.20 (3) and Civil Practice Law and Rules § 2307, the People challenged the court’s authority to issue a subpoena on behalf of a defendant and characterized the defendant’s efforts to secure video footage via a “so-ordered” subpoena as an attempt to “circumvent the discovery process” (see People’s mem of law at 3). Notwithstanding their position, the People stated that steps had been taken to preserve the specific surveillance footage sought by defendant. On August 30, 2017, the defense filed their response to the motion to quash. In their affirmation, the defense recounted a conversation with the assigned Assistant District Attorney (ADA). The assigned ADA informed the defense that video footage had been received via a grand jury subpoena, that the footage had not been viewed, that the defense would not be permitted to view the footage, that the complainant, apparently contrary to previously provided information, never saw or identified the defendant and that the witness who had identified the defendant as a participant in the alleged robbery had missed his scheduled appointment at the BXDA’s Office. In a memorandum of law accompanying the response, the defense challenged the points raised by the People. In essence, the defense argued that the court possessed the statutory and constitutional authority to issue, on behalf of a defendant, a pre-indictment, “so-ordered” subpoena for relevant and necessary surveillance footage in the possession of the NYPD. On September 6, 2017, the court received a letter from the People itemizing the footage provided by the NYPD in response to the grand jury subpoena. The list included footage from two elevators located in 1635 East 174th Street for the period of 3:15 p.m. to 3:43:59 p.m., from the lobby of 1635 East 174th Street for the period from 3:13:12 p.m. to 3:48:14 p.m., and from outside of 1630 East 174th Street for the period from 3:00 p.m. to 3:59:59 p.m. The letter further stated that the People were “not in possession of video surveillance of the exterior of 1635 East 174th Street” and that the camera “outside of 1630 East 174th Street was positioned towards Morrison Avenue (away from location of incident).” No explanation was provided as to why the footage did not cover the entire time periods demanded. On September 7, 2017, the court received an email from the defense stating that the surveillance footage listed by the People did not correspond with the footage demanded in the court-ordered subpoena. Specifically, he stated: “The defense . . . made a showing that video was necessary from 2:35 pm through 4:35 p.m. This period until 4:35 p.m. is important because, as explained in our application for the subpoena and in the memorandum responding to the District Attorney’s motion to quash, it will show that Ms. Swy-gert was in her home during the robbery and that she only left her home after the robbery had ended. “Again, I appreciate that the District Attorney has obtained some video but I must object to any suggestion that all of the relevant video has been secured. Moreover . . . we believe that Ms. Swy-gert has an independent right to subpoena video that will exonerate her and that the law does not require the defense to obtain exculpatory video through the District Attorney’s Office” (citation omitted). Later that same day, in an email from the BXDA’s Office, the People stated: “The People are not at this time prepared to allow [the defense] to view the video . . . [T]he People will attempt to secure the time period that [the defense] is referring to. The People will advise . . . when we obtain such time periods” (emphasis added). On September 15, 2017, the court received an email from the defense stating that they had been advised by the assigned Assistant, via email, that only a portion of the footage requested by the defense had been received and that other portions were “no longer available.” Upon receiving this information, the defense contacted the NYPD’s Legal Department and was “informed that pursuant to [the ‘so-ordered’] subpoena video has been preserved.” On September 21st and September 27th, 2017, additional submissions were filed by the parties. These latter submissions provided additional support for the respective positions of the parties. Legal Analysis The People challenge the authority of a duly appointed acting Supreme Court justice, sitting in a felony waiver part, to issue a pre-indictment, “so-ordered” subpoena for relevant, necessary and non-privileged videotape footage for in camera inspection. This court finds that such discretionary authority exists. The starting point for the court’s analysis is the statutory language contained in article 610 of the Criminal Procedure Law. CPL 610.10 (3) provides: “As used in this article, ‘subpoena’ includes a ‘subpoena duces tecum.’ A subpoena du-ces tecum is a subpoena requiring the witness to bring with him and produce specified physical evidence.” Criminal Procedure Law § 610.20 (1) provides, “Any criminal court may issue a subpoena ... in any criminal action or proceeding in such court.” Subdivisions (2) and (3), respectively, authorize “[a] district attorney . . . conducting the prosecution of a criminal action or proceeding” and “[a]n attorney for a defendant in a criminal action or proceeding,” as officers of the criminal court, to issue a subpoena. However, pursuant to CPL 610.20 (3), an attorney for a defendant in a criminal action or proceeding “may not issue a subpoena duces tecum of the court directed to any department, bureau or agency of the state . . . Such a subpoena duces tecum may be issued in behalf of a defendant upon order of a court pursuant to the rules applicable to civil cases as provided in section twenty-three hundred seven of the civil practice law and rules.” CPLR 2307 provides: “A subpoena duces tecum to be served upon ... a department or bureau of a municipal corporation or of the state, or an officer thereof, requiring the production of any books, papers or other things, shall be issued by a justice of the supreme court in the district in which the book, paper or other thing is located or by a judge of the court in which an action for which it is required is triable. Unless the court orders otherwise, a motion for such subpoena shall be made on at least one day’s notice to the . . . department, bureau or officer having custody of the book, document or other thing and the adverse party. Such subpoena must be served upon such . . . department . . . and the adverse party at least twenty-four hours before the time fixed for the production of such records.” The People contend that the subpoena issued by this court for the production of videotape footage from the NYPD is invalid because it was not issued, as required by CPLR 2307, by a “justice of the supreme court.” This contention fails for two reasons. First, Criminal Court judges may “be temporarily assigned to the supreme court” (see NY Const, art VI, § 26 [g]) and when so assigned, such judges “have the powers, duties and jurisdiction of a judge or justice of the court to which assigned” (see NY Const, art VI, § 26 [k]; see also People v Harris, 177 Misc 2d 154, 156 [Sup Ct, Kings County 1998]). Second, this court has been duly designated as an acting Supreme Court justice since January 1, 2017. Accordingly, the subpoena duces tecum issued by this court on July 20, 2017, while sitting in Part FB, a felony waiver part, was issued by “a justice of the supreme court.” The People further contend that the defendant’s efforts to secure video footage via subpoena duces tecum constitute an attempt to “circumvent the discovery process.” As to this contention, the court finds no such attempt. Rather, the court finds that the defense was attempting to fulfill his ethical obligation to ensure the preservation of potentially material evidence—evidence that, if not secured immediately, would likely be destroyed. As noted by the defense, an attorney for a defendant in a criminal action or proceeding is required to competently and diligently represent his or her client (see Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.1, 1.3). Competent and diligent representation requires defense counsel to conduct a thorough investigation and failure to do so may result in a finding that a defendant was not afforded meaningful representation. As stated in People v Oliveras (21 NY3d 339, 346-347 [2013]): “Essential to any representation, and to the attorney’s consideration of the best course of action on behalf of the client, is the attorney’s investigation of the law, the facts, and the issues that are relevant to the case. An attorney’s strategy is shaped in significant part by the results of the investigation stage of the representation. Thus, ‘[a] defendant’s right to representation does entitle him to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial’ (People v Bennett, 29 NY2d 462, 466 [1972])” (citations omitted). Appropriate investigation includes the securing of, or at least the attempt to secure, relevant videotape footage of an alleged crime scene. In People v Cruz (152 AD3d 822 [3d Dept 2017]), trial evidence established that an alleged robbery occurred in an area surrounded by businesses with security cameras and that defense counsel, though aware of this fact, did not attempt to obtain footage from these cameras. The Court remitted the matter for a hearing to determine if counsel’s failure to “investigate whether . . . security cameras captured the incident on video prior to trial [and to] . . . obtain the footage to determine whether it undercut the victim’s claim that defendant had robbed him . . . may have amounted to less than meaningful representation (People v Deyo, 82 AD3d 1503, 1505 [2011], lv denied 17 NY3d 815 [2011]; see e.g. Matter of John JJ., 298 AD2d 634, 636 [2002])” (see Cruz, 152 AD3d at 825 [internal quotation marks omitted]). Here, since the inception of this case, the defense forcefully and persistently attempted to obtain surveillance footage that had the potential to “undercut” the complainant’s claims and to corroborate his client’s claim that she was not present at nor involved in any criminal activity. In an effort to secure this footage, the defense dispatched an investigator to the alleged crime scene who confirmed that surveillance cameras existed at the scene. The defense, in this court’s estimation, has established a compelling showing that these cameras, if working, might yield relevant, material and necessary information pertaining to his client’s guilt or innocence. The defense, however, in contrast to Cruz, could not simply subpoena this potentially exculpating evidence because the footage was held by the NYPD. Thus, the defense had to secure a “so-ordered” subpoena from the court in accordance with CPL 610.20 (3) and CPLR 2307. The People, claiming the mantle of the sole gatekeeper of such potentially crucial and exculpatory evidence, assert that the surveillance footage, if exculpatory, would be provided to the defense in due time in accordance with their Brady obligations (see Brady v Maryland, 373 US 83 [1963]). The People note that the right to exculpatory material is codified in CPL 240.20 (1) (h), which provides: “Except to the extent protected by court order, upon a demand to produce by a defendant against whom an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor is pending, the prosecutor shall disclose to the defendant and make available for inspection, photographing, copying or testing, the following property: “(h) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.” The People further assert that if the footage incriminated the defendant, it would be discoverable pursuant to CPL 240.20 (1) (g). This paragraph requires the People to disclose “[a]ny tapes or other electronic recordings which the prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction.” The People, while required to provide “[a]ny tapes . . . which the prosecutor intends to introduce at trial” pursuant to CPL 240.20 (1) (g) and exculpatory evidence pursuant to CPL 240.20 (1) (h), can only provide such “tapes” or “exculpatory evidence” after such evidence has been secured. Here, the defense compellingly argued that if immediate action was not taken, the recordings, which are maintained by the NYPD’s VIPER Unit for a period of no more than 30 days, would be destroyed. The People are correct that the defendant, inasmuch as neither an indictment nor an information is pending, is not entitled to disclosure of a videotape under either paragraph (g) or (h) of CPL 240.20 (1) (see Matter of Terry D., 81 NY2d 1042 [1993]). The People are also correct that, “in general, the subpoena duces tecum may not be used for the purpose of discovery or to ascertain the existence of evidence” (People v Gissendanner, 48 NY2d 543, 551 [1979]; Matter of Brown v Grosso, 285 AD2d 642 [2d Dept 2001], lv denied 97 NY2d 605 [2001]). The defense, however, is not seeking discovery pursuant to either of these paragraphs. Rather, the defense is seeking non-privileged, material and necessary evidence in accordance with the defendant’s right to compulsory process under the Sixth Amendment of the United States Constitution, her right to due process under the New York State Constitution and her statutory rights under section 12 of the Civil Rights Law and article 610 of the Criminal Procedure Law. The Sixth Amendment of the United States Constitution provides, in pertinent part, “In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor” (emphasis added). The right to compulsory process is applicable to the states through the Fourteenth Amendment (see Pennsylvania v Ritchie, 480 US 39 [1987]; People v Thurston, 209 AD2d 976 [4th Dept 1994]). As stated in Washington v Texas (388 US 14, 18 [1967]): “The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States . . . “The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.” Although the New York State Constitution does not contain a Compulsory Process Clause, this “fundamental” right is included in section 12 of the Civil Rights Law which provides, in pertinent part, “In all criminal prosecutions, the accused has a right ... to have compulsory process for obtaining witnesses in his favor.” Moreover, the Court of Appeals has recognized that, under certain circumstances, the right of compulsory process takes precedence over legitimate and countervailing state interests. In People v Gissendanner (48 NY2d 543, 548 [1979]), the defense sought, by court-ordered subpoena duces tecum, the qualifiedly privileged personnel records (see Civil Rights Law § 50-a) of police officers involved in the defendant’s case. The Court there stated: “Granting . . . that the constitutional roots of the guarantees of compulsory process and confrontation may entitle these to a categorical primacy over the State’s interest in safeguarding the confidentiality of police personnel records, it is not to be assumed that, in striking the balance between the two, police confidentiality must always yield to the demands of a defendant in a criminal case. The circumstances which support such demands may vary greatly. And, though access must be afforded to otherwise confidential data relevant and material to the determination of guilt or innocence, as, for example, . . . when it involves other information which, if known to the trier of fact, could very well affect the outcome of the trial . . . , there is no such compulsion when requests to examine records are motivated by nothing more than impeachment of witnesses’ general credibility” (48 NY2d at 548 [emphasis added and citations omitted]). Here, the defense is seeking video footage which, they assert, will reveal evidence that is “relevant and material to the determination of guilt or innocence” (id.). Unlike CPL 240.20 (1), the United States Constitution, Civil Rights Law § 12, and article 610 of the Criminal Procedure Law do not require the pendency of “an indictment, superior court information, prosecutor’s information, information, or simplified information charging a misdemeanor” to exercise the “fundamental” right to compulsory process through the issuance of a “so-ordered” subpoena. A defendant seeking such potentially exculpating evidence “is not . . . required to show that the [evidence] sought [is] ‘ “actually” relevant and exculpatory’ ([People v Kozlowski, 11 NY3d 223, 242 (2008), rearg denied 11 NY3d 904 (2009)], quoting Gissendanner, 48 NY2d at 550). Rather, a defendant need only ‘proffer a good faith factual predicate sufficient for a court to draw an inference that specifically identified materials are reasonably likely to contain information that has the potential to be both relevant and exculpatory’ ” (People v Wildrick, 83 AD3d 1455, 1457 [2011], quoting Kozlowski, 11 NY3d at 241; Gissendanner, 48 NY2d at 548; see also People v Ricketts, 38 AD3d 291 [1st Dept 2007], lv denied 8 NY3d 989 [2007]; People v Bagley, 279 AD2d 426 [1st Dept 2001], lv denied 96 NY2d 711 [2001]). Upon receipt of a sufficient proffer, courts have the discretionary authority to issue a “so-ordered” subpoena (see generally People v Villacorta, 76 AD3d 911 [1st Dept 2010]; People v Zilberman, 297 AD2d 517 [1st Dept 2002]; see also People v Duran, 32 Misc 3d 225, 229 [Crim Ct, Kings County 2011] [“surveillance tapes depicting the very incident giving rise to the criminal charges . . . are properly subject to subpoena”]). In exercising this discretion, this court considered the countervailing interests of the parties. This court also considered the following factors: (1) the footage was not privileged or quali-fiedly privileged; (2) the footage directly related to the defendant’s guilt or innocence; (3) the footage was potentially case dispositive; (4) the footage was subject to imminent destruction; (5) the People were unable to provide adequate assurances that the evidence sought had been or would be preserved; (6) sanctions for the failure to preserve the footage might be insufficient to remedy the loss; and (7) the People’s ability to seek further relief related to disclosure of the footage was safeguarded by the court’s in camera marking. Accordingly, the issuance of the “so-ordered” subpoena for in camera inspection constituted an appropriate exercise of discretion and the People’s motion to quash the defendant’s subpoena is denied.