People v Mebuin (2017 NY Slip Op 09276)





People v Mebuin


2017 NY Slip Op 09276


Decided on December 28, 2017


Appellate Division, First Department


Gesmer, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 28, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr.,J.P.
Karla Moskowitz
Marcy L. Kahn
Ellen Gesmer,JJ.


598/10 4557 

[*1]The People of the State of New York, Respondent,
v
Reuel Mebuin, Defendant-Appellant.



Defendant appeals from the order of the Supreme Court, New York County (Bonnie G. Wittner, J.), entered on or about July 31, 2013, which denied his CPL 440.10 motion to vacate a judgment of conviction rendered February 17, 2010.




Robert S. Dean, Center for Appellate Litigation, New York (Robin Nichinsky of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Katherine Kulkarni and Patrick J. Hynes of counsel), for respondent.



GESMER, J.


Both the United States Supreme Court and the New York Court of Appeals have recognized that, for many noncitizens, deportation may be as dire a consequence of conviction as incarceration (see e.g. Lee v United States, - US -, 137 S Ct 1958, 1966, [2017]; People v Peque, 22 NY3d 168, 183 [2013], cert denied sub nom Thomas v New York, - US -, 135 S Ct 90 [2014]). In this appeal from the summary denial of his CPL 440.10(1)(h) motion, defendant contends that his counsel provided him ineffective assistance by misadvising him as to the deportation consequences of a misdemeanor guilty plea. Because defendant's allegations are sufficient to warrant a hearing, we hold that the motion court abused its discretion by summarily denying defendant's motion, and we remit the matter for further proceedings.
Background
Defendant, a citizen of the Republic of Cameroon, arrived in the United States in 1995 and was granted asylum in 1998, reflecting a finding that he had a well-founded fear of persecution if he returned to Cameroon. He became a lawful permanent resident in 2004.
In 2009, defendant was indicted on two counts of the class D felony of sexual abuse in [*2]the first degree for having allegedly touched the private parts of his ex-girlfriend's two minor daughters.
On February 5, 2010, defendant appeared before the court with his counsel. The People offered a sentence of a conditional discharge if defendant pleaded guilty to the class A misdemeanor of endangering the welfare of a child. When the court asked defendant if he was going to agree to take the plea that day, they had the following exchange:
DEFENDANT: "Your honor, I very much want to plead guilty, but I am so concerned with the-
THE COURT: "You're what? . . . I am not your lawyer, you have a lawyer. I am just the judge. You tell me if you want the plea, and I will tell you what the consequences will be, but I can't help you with your immigration problems.
. . .
THE COURT: "[I]t's a very good offer, and if you get convicted of a felony you will still have the deportation issue."
Defendant accepted the People's offer. Accordingly, the court allocuted defendant to establish that he had acted in a manner injurious to the physical, mental, or moral welfare of his ex-girlfriend's two daughters, the elements of endangering the welfare of a child (Penal Law § 260.10[1]). The court then allocuted defendant as to whether he had touched the children inappropriately on their private parts, which established the elements of sexual abuse in the first degree (Penal Law § 130.65[3]), although it was not necessary to the plea agreement. Defendant's attorney did not object.
The court then stated: "Just one other thing I want to tell you that you're pleading in State court to a misdemeanor, however, this has nothing to do with your immigration status which is not decided by me. It will be decided in another venue do you understand that?"
Defendant answered, "I do."
Two weeks later, defendant appeared with counsel and pleaded guilty to one count of endangering the welfare of a child. The court again allocuted defendant as to whether he had acted in a manner injurious to one of his ex-girlfriend's daughters, and then incorporated, by reference, the full factual allocution that it had taken previously. During this appearance, the court stated: "This plea could affect your immigration status. I have no control over that. That's determined by the federal government. Do you understand that as well?" Defendant answered, "I do." The court accepted the plea and imposed the promised sentence. Defendant did not appeal.
Defendant applied for naturalization in September 2011. In March 2012, he was notified that the federal government sought to deport him, alleging that he had been convicted of an aggravated felony and a crime of child abuse (8 USC §§ 1227[a][2][A][iii], [E][i]). He was immediately detained in immigration custody in New Jersey. Soon after, defendant's application to naturalize was denied for "poor moral character," based on the facts he allocuted to in the second part of his allocution.
In May 2012, the Newark Immigration Court granted the deportation petition based on defendant's conviction and his factual allocution on February 5, 2010. Defendant was ordered removed.[FN1]
While detained, defendant, pro se, submitted a motion to "revise and revoke" in March 2013, seeking to vacate his conviction on the grounds of ineffective representation under People [*3]v McDonald (1 NY3d 109 [2003]), because his counsel had misadvised him of the deportation consequences of his plea [FN2]. In support of the motion, defendant swore that counsel had told him that the plea would "have no [deportation] consequences at all" and that, if the plea did lead to deportation consequences, "[counsel] will get defendant out of any such consequences." Defendant also swore that he only became aware of the consequences of his guilty plea after he was placed into removal proceedings following his application to naturalize. Defendant explained that, had he known that the plea would result in deportation, he would not have pleaded guilty since he had been persecuted for his political views in his home country. Defendant noted that his child, a United States citizen, would be harmed by his deportation because he was a single parent. Defendant also supported his motion with letters of support from his son and from the staff and members of his church.
In opposition, the People argued, inter alia, that the court lacked jurisdiction to hear defendant's motion because he was in immigration custody in New Jersey, that defendant's allegations were conclusory and unsupported by an affidavit by his counsel, that defendant had failed to establish that, but for counsel's alleged ineffectiveness, he would have rejected the plea and gone to trial, that defendant was not prejudiced because he had obtained a nonincarceratory misdemeanor disposition, and that the court's statements to defendant had made the risk of deportation clear to him.
In reply, defendant submitted documentation of his status as an asylee and subsequent status as a lawful permanent resident. Defendant also explained the absence of an affidavit from his counsel by swearing that he had written to counsel but received no response. Defendant alleged that he had asked to take the case to trial but counsel had discouraged him. Critically, defendant swore that he would have "insisted" on going to trial had counsel not misadvised him, because even "[l]ife in jail would have been . . . a better option than the death sentence [that] defendant [would] face[] upon his return to his native country if deported."
The motion court denied defendant's motion for the reasons stated in the People's affirmation in opposition.
A justice of this Court granted defendant leave to appeal (CPL 460.15), and we now reverse.
Analysis
A court may deny a motion under CPL article 440 without a hearing when, as the People argued here:
"(a) The moving papers do not allege any ground constituting legal basis for the motion; or
"(b) The motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one; or
. . .
"(d) An allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is [*4]made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true" (CPL 440.30[4]).
This Court may reverse the summary denial of a CPL article 440 motion when the motion court abuses, or improvidently exercises, its discretion (see People v Samuels, 143 AD3d 401, 402 [1st Dept 2016]).
We grant defendant's motion to the extent of ordering a hearing, because he sufficiently alleged both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance (McDonald, 1 NY3d at 113-114, citing Hill v Lockhart, 474 US 52, 58-59 [1985]; Strickland v Washington, 466 US 668, 687-688 [1984]).[FN3]
Defendant showed that counsel "affirmative[ly] misrepresent[ed]" (McDonald, 1 NY3d at 115) the deportation consequences of the plea by alleging that counsel advised him that there would be no deportation consequences to the plea and that, if there were, counsel would simply "get defendant out of" them (People v Santos, 145 AD3d 461 [1st Dept 2016]; People v Rosario, 132 AD3d 454 [1st Dept 2015]; People v Roberts, 143 AD3d 843, 845 [2d Dept 2016]).
The People challenge the sufficiency of defendant's allegations on the ground that defendant did not supply an affidavit by counsel (CPL 440.30[4][d]). We have not always required an attorney affidavit on a motion under CPL 440.10(1)(h) (see People v Pedraza, 56 AD3d 390 [1st Dept 2008], lv denied 12 NY3d 761 [2009]; People v Gil, 285 AD2d 7, 11-12 [1st Dept 2001]; see also People v Radcliffe, 298 AD2d 533, 534-535 [2d Dept 2002]; accord People v Bennett, 139 AD3d 1350, 1351-1352 [4th Dept 2016]). Here, the absence of an affidavit by defendant's counsel does not support the summary denial of defendant's motion for three reasons.
First, defendant's allegations are corroborated by other parts of the record (cf. Rosario, 132 AD3d at 454 [plea and sentencing minutes corroborated defendant's McDonald claim]). They are corroborated by defendant's application to naturalize, postplea, which exposed him to detection by Immigration and Customs Enforcement (ICE), since he certainly would not have made the application if he had known that he was in any danger of deportation. In addition, counsel's failure to object to the court's unnecessary allocution on the elements of sexual abuse in the first degree (see People v Clairborne, 29 NY2d 950 [1972]) suggests that counsel may not have accurately understood the consequences of the plea.
Second, where, as here, defendant's application is adverse and hostile to his trial attorney, "[r]equir[ing] the defendant to secure an affidavit, or explain his failure to do so, is wasteful and unnecessary" (Radcliffe, 298 AD2d at 534; People v Washington, 128 AD3d 1397, 1399 [4th Dept 2015]).
Third, in any event, defendant explained the absence of an affidavit by his counsel (see Pedraza, 56 AD3d at 391; Gil, 285 AD2d at 11-12).
The People also challenge defendant's allegations of deficient performance on the ground that counsel's advice was not actually erroneous to the extent he told defendant that, if the plea did lead to deportation, counsel would "get defendant out of" that consequence (see CPL 440.30[4][a]; People v Melo-Cordero, 123 AD3d 595 [1st Dept 2014]). The People contend that this advice was accurate both because it conveyed to defendant that he could be deported as a consequence of the plea and because his conviction did not constitute an aggravated felony requiring mandatory deportation. The People argue that, since defendant was released on bond, the Immigration Court must have now concluded that his conviction did not constitute an aggravated felony (8 USC § 1226[c][1][B]), and defendant is eligible for various forms of relief from removal. We reject the People's argument for two reasons.
First, to the extent the People's argument is based on their contention that defendant's conviction did not constitute an aggravated felony, the People are asking us to affirm the motion court on a ground that it did not reach. The court adopted the reasoning of the People's affirmation in opposition, and the People did not raise this issue before the court. Accordingly, our consideration of this argument is barred by People v LaFontaine (92 NY2d 470, 473-474 [1998]).
Second, regardless of whether defendant's conviction constitutes an aggravated felony, or instead a crime of child abuse, counsel's alleged advice was inaccurate. By allegedly stating that he could "get defendant out of" the plea's deportation consequences, counsel did not accurately convey the possibility of deportation to defendant. Rather, counsel's alleged advice made it seem as though obtaining relief from removal was guaranteed and that, as a result, defendant had no reason to fear being deported as a consequence of his plea. This was inaccurate. A noncitizen seeking relief from removal bears the burden of proving his or her entitlement to such relief (8 USC § 1229a[c][4][A]), and may not succeed.
Furthermore, defendant may lose his continued eligibility for asylum and related relief (8 USC § 1158[b][2][A][ii]; 8 USC § 1231[b][3][B][ii]; 8 CFR 1208.16[d][2]) based on a conviction for a "particularly serious crime," which is a broader category than an aggravated felony (see Matter of M-H-, 26 I & N Dec. 46, 50 [BIA 2012]). Here, the federal government may argue that defendant's factual allocution to sexual abuse in the first degree of young children should make defendant ineligible for continued asylum and thus subject to deportation (see e.g. M-H-, 26 I & N Dec. at 46-47). In addition, while defendant is eligible for cancellation of removal, that relief is discretionary, and the seriousness of defendant's offense, as allocuted, may be weighted against him (see Matter of Sotelo-Sotelo, 23 I & N Dec. 201, 203 [BIA 2001]).[FN4]
We turn now to the issue of defendant's proof of prejudice.
Defendant swore that he fears being deported to the Republic of Cameroon, where he believes that his life would be in danger, a belief that was credited when he was granted asylum. He alleged that he had been in this country more than 20 years, that he had become an important member of his church, and that he was a single parent to his son, an American citizen. Defendant swore that he would have chosen trial over pleading guilty had he known that his plea would make him eligible to be deported. Thus, defendant's allegations sufficiently established that, but for counsel's misadvice, he would have rejected the plea and chosen to proceed to trial (McDonald, 1 NY3d at 114; Santos, 145 AD3d at 461; Rosario, 132 AD3d at 455).
The People argue that defendant failed to establish prejudice because the plea allowed [*5]him to avoid a felony conviction, which carried mandatory sex offender registration, a potential sentence of up to 14 years, and near-certain deportation, and instead to plead to a nonincarceratory, nonregistrable misdemeanor, which reduced the likelihood of his detection by ICE. The People further contend that their case was strong and that accepting the plea was the best way for defendant to avoid deportation. In addition, the People argue that, because the court mentioned deportation and immigration status during the plea proceedings, defendant could not have been prejudiced by accepting the plea. We reject these contentions.
Since deportation is a serious consequence, "the equivalent of banishment or exile" (Delgadillo v Carmichael, 332 US 388, 391 [1947]), we have recognized that a noncitizen defendant may be willing to forgo an otherwise "very beneficial deal" if it carries the consequence of deportation (see Samuels, 143 AD3d at 403 [internal quotation marks omitted]). For defendant, the calculus of either pleading guilty or going to trial was not the same as it would have been for a citizen defendant, who would not have had to weigh the possibility of deportation. Even where the maximum penalty at trial is significantly greater than the penalty offered on the plea, a noncitizen defendant may be able to establish prejudice (People v Picca, 97 AD3d 170, 185 [2d Dept 2012]); State v Sandoval, 171 Wash 2d 163, 175-176, 249 P3d 1015, 1022 [2011]). That is even more the case for an asylee facing life-threatening consequences should he be deported to the Republic of Cameroon.
We do not find the unique plea calculus for defendant changed by the People's contention that their case was strong. At the outset, there is no record support for this contention beyond the indictment itself and the grand jury's finding of reasonable cause (CPL 190.65[1]). However, even if the People's case were particularly strong, we would still hold that defendant's allegations of prejudice were sufficient to warrant a hearing. In Lee v United States (- US -, -, 137 S Ct 1958, 1966 [2017], supra), the Supreme Court rejected the government's request that it "adopt a per se rule that a defendant with no viable defense cannot show prejudice from the denial of his right to trial." Rather, the Court concluded that, where deportation is the "determinative issue" in whether to plead guilty or proceed to trial, prejudice may still be established even when the likelihood of acquittal is remote (id., 137 S Ct at 1968-1969). Here, defendant's allegations sufficiently established that deportation was indeed the determinative issue and that he was willing to take his chances at trial in order to avoid that consequence.
Our conclusion is also unchanged by the People's argument that the court's statements during defendant's plea proceedings alleviated the prejudice. While the court did mention deportation and immigration status, it did not affirmatively state that deportation was a possible consequence of defendant's plea (cf. People v Peque, 22 NY3d 168, 183 [2013], cert denied sub nom Thomas v New York - US -, 135 S Ct 90 [2014], supra)[FN5]. In any event, we have recognized that an attorney's misadvice may undermine the court's statements about deportation consequences (see People v Corporan, 135 AD3d 485 [1st Dept 2016]).
For all these reasons, we find that the motion court abused its discretion by summarily [*6]denying defendant's motion, and we remit the matter for a hearing.[FN6]
Accordingly, the appeal from the order of the Supreme Court, New York County (Bonnie G. Wittner, J.), entered on or about July 31, 2013, which denied defendant's CPL 440.10 motion to vacate a judgment of conviction rendered February 17, 2010, should be held in abeyance, and the matter remitted for a hearing on defendant's
claim of ineffective assistance of counsel under People v McDonald (1 NY3d 109 [2003]) and a decision de novo on the motion.
All concur.
Appeal from order, Supreme Court, New York County (Bonnie G. Wittner, J.), entered on or about July 31, 2013, held in abeyance, and the matter remitted for a hearing on defendant's claim of ineffective assistance of counsel under People v McDonald (1 NY3d 109 [2003]) and a decision de novo on the motion.
Opinion by Gesmer, J. All concur.
Sweeny, J.P., Moskowitz, Kahn, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 28, 2017
CLERK



Footnotes

Footnote 1: Eventually, defendant was released on bond.

Footnote 2: We liberally construe defendant's pro se motion papers (see Haines v Kerner, 404 US 519, 520-521 [1972 per curiam]) as a motion under CPL article 440, as did the motion court.

Footnote 3: In McDonald, the Court of Appeals considered the defendant's claim of ineffective assistance of counsel based on immigration misadvice solely under the Federal Constitution (McDonald, 1 NY3d at 114; see also People v Baret, 23 NY3d 777, 785 [2014], cert denied - US -, 135 S Ct 961 [2015]). Since we conclude that defendant's allegations warrant a hearing under the federal standard, we do not review defendant's motion papers under New York State's broader "meaningful representation" standard (see People v Henry, 95 NY2d 563, 565 [2000] [internal quotation marks omitted]).

Footnote 4: Asylum is also a discretionary form of relief (INS v Cardoza-Fonseca, 480 US 421, 428 n 5 [1987]).

Footnote 5: Defendant also argues that his conviction should be reversed on Peque grounds. We reject that argument. We have previously held that a Peque claim is not cognizable on a CPL 440 motion and that Peque does not apply retroactively to a conviction that became final before it was decided (People v Shabaan, 138 AD3d 407 [1st Dept 2016], lv denied 27 NY3d 1155 [2016]).

Footnote 6: Since we are remitting for a hearing on defendant's McDonald claim, we find it unnecessary to consider his claim of ineffectiveness based on counsel's alleged failure to investigate (see People v Oliveras, 21 NY3d 339, 346-347 [2013]). Defendant's allegation that counsel did not sufficiently investigate his trial defense in connection with advising him to plead guilty is relevant to the issue of counsel's alleged misadvice and defendant's desire to proceed to trial. Therefore, it is properly the subject of the hearing we now order.