[993 NE2d 1241, 971 NYS2d 221]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GEORGE
OLIVERAS, Respondent.

Argued April 25, 2013; decided June 6, 2013

340

**POINTS OF COUNSEL**

*Robert T. Johnson, District Attorney*, Bronx (*Mary Jo L. Blanchard* and *Joseph N. Ferdenzi* of counsel), for appellant. The Appellate Division erred, as a matter of law, when it found trial counsel ineffective for presenting a defense based on lay witness testimony rather than obtaining psychiatric records and presenting an expert witness where counsel explained that his actions were dictated by his client and part of a strategy to avoid a damaging battle of the experts. (*Strickland v Washington*, 466 US 668; *Tippins v Walker*, 77 F3d 682; *United States v Ortiz Oliveras*, 717 F2d 1; *People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Borrell*, 12 NY3d 365; *People v Rivera*, 71 NY2d 705; *People v Bell*, 48 NY2d 933; *People v Zaborski*, 59 NY2d 863; *People v Evans*, 16 NY3d 571.)

*Office of the Appellate Defender*, New York City (*Richard M. Greenberg* and *Risa Gerson* of counsel), for respondent. Trial counsel was ineffective for failing to do what he said he would do: obtain defendant's psychiatric and Social Security records to support the defense that the statement made by defendant after hours of interrogation was not voluntary nor reliable because defendant's history of mental illness and intellectual deficits rendered him vulnerable to police coercion. (*People v Pulecio*, 237 AD2d 633; *Wainwright v Sykes*, 433 US 72; *Jones v Barnes*, 463 US 745; *Strickland v Washington*, 466 US 668; *People v Porter*, 9 NY3d 966; *People v McRay*, 51 NY2d 594; *Singletary v Fischer*, 365 F Supp 2d 328; *People v Bedessie*, 19 NY3d 147; *People v Ciaccio*, 47 NY2d 431; *People v Gruden*, 42 NY2d 214.)

*Milbank, Tweed, Hadley & McCloy LLP*, New York City (*Dorothy Heyl* of counsel), for The Innocence Network, amicus

curiae. Given the power of confession evidence, defense attorneys must provide jurors with an explanation of *why* their client falsely confessed; in the absence of a recorded interrogation, the best and often only explanation is defendant's intellectual disability. (*McMann v Richardson*, 397 US 759; *People v Benevento*, 91 NY2d 708; *Strickland v Washington*, 466 US 668; *Adams v United States ex rel. McCann*, 317 US 269; *Powell v Alabama*, 287 US 45; *People v Claudio*, 83 NY2d 76; *People v Hobot*, 84 NY2d 1021; *People v Flores*, 84 NY2d 184; *People v Rivera*, 71 NY2d 705; *Williams v Taylor*, 529 US 362.)

**OPINION OF THE COURT**

RIVERA, J.

The People appeal an order of the Appellate Division granting defendant George Oliveras' motion to vacate his conviction, and remanding for a new trial on the ground that defendant was deprived adequate assistance of counsel (90 AD3d 563 [1st Dept 2011]). We affirm and reject the People's argument that defendant received adequate assistance where trial counsel failed to conduct an appropriate investigation of records critical to the defense.

## I. Facts and Procedural History

### A. Defendant's Interrogation and Inculpatory Statements

New York City Police Department detectives suspected defendant of the November 24, 1999 shooting and murder of Marvin Thompson. Upon defendant's voluntary appearance at the police station two days after the shooting, detectives immediately arrested and placed defendant in a windowless interrogation room. Prior to the interrogation, defendant's mother, who had gone to the station with him, informed the detectives that defendant had been hospitalized for mental illness as a child.

Detectives proceeded to interrogate defendant over the next 6½ hours.[1] During the course of the interrogation, defendant made three statements. His first statement, made within the first 30 minutes of the interrogation, asserted his innocence and that he was at his girlfriend's home when the shooting occurred. The officers then left defendant alone for several hours. When they returned to resume their questioning, defendant appeared

---

1. A police officer read defendant his *Miranda* rights and recorded defendant's waiver of those rights prior to the first interview (*Miranda v Arizona*, 384 US 436 [1966]).

tired and upset and explained to the detectives he felt overwhelmed. At 12:50 a.m. the detectives recorded defendant's second statement, that he had killed the victim because he had reached into his coat pocket as if to pull out a gun to shoot defendant. At approximately 2:00 a.m., defendant made a third statement repeating he had shot the victim when he saw him reach in his pocket for what he thought was a gun. He made this statement in the presence of an Assistant District Attorney who had joined the interrogation and asked defendant questions about the shooting,[2] including if the gun he used was an automatic or a revolver, to which defendant replied "I think revolver. I'm not sure."[3]

## B. Trial Counsel's Pretrial Motions

In early 2000, trial counsel moved for a psychiatric examination pursuant to CPL article 730. Two reports from psychiatric experts concluded defendant was fit to stand trial, but also noted he has a learning disability and certain mental health issues. Specifically, both psychiatric experts separately noted that defendant demonstrated a mild impairment of concentration and memory and was previously evaluated for auditory hallucinations. They both noted that defendant's intelligence was in the low average range. Supreme Court eventually found defendant fit to stand trial.

At the psychological evaluation hearing, trial counsel also announced his intention to present his client's psychiatric records to an expert in order to challenge the voluntariness of the admissions. The court issued judicial subpoenas for those records.

Months later, by early 2001, trial counsel had neither sought to execute the subpoenas nor otherwise reviewed these or other documents related to defendant's mental illness or condition. Nevertheless, without supporting witnesses and relying solely on the existing CPL article 730 report, trial counsel moved to suppress the incriminating statements based on involuntariness. Supreme Court denied the motion, concluding that the CPL article 730 report did not support the defense claim that defendant was unable to knowingly and voluntarily waive his *Miranda* rights due to mental illness. The court specifically noted the failure to produce defendant's psychiatric records.

---

**2.** The Assistant District Attorney re-Mirandized defendant on the record before asking him any questions.

**3.** The two inculpatory statements were inconsistent and contradicted the evidence which established that the victim was not wearing a coat and the gun used in the shooting was not a revolver.

After another nine months, trial counsel belatedly moved under CPL 250.10 for permission to serve and file late notice of intent to proffer psychiatric evidence. In response, the People objected and requested by motion in limine a ruling precluding trial counsel from raising any psychiatric or psychological issues during the trial. Supreme Court denied defendant's motion, predicating its denial on trial counsel's failure to proffer a reasonable explanation for the notification delay, and the failure to produce the aforementioned records in support of the motion. The court observed that the medical records "were never delivered to the Police Department" and were never seen by trial counsel. The court then observed that "we don't know what the abnormality is and we don't have any records and we don't have any consultation report to go on." The court ultimately found that trial counsel was "just fishing" for any useful information. Supreme Court granted the People's motion, holding that CPL 250.10 notice "is required in all sorts of different situations, including situations where . . . the defense might wish to call a lay person to testify about psychiatric difficulties." In response to trial counsel's assertions at the hearing that he intended to present defendant's mental health history through testimony of defendant's mother but "not in an expert format," the court ruled that defendant's mother could give "non-expert" testimony, if relevant to the issue in the case, provided that she did not allude "to psychiatric records or the contents thereof," or otherwise give "the patina of psychological expertise" to her testimony.

## C. Trial and Sentence

At the trial, the People's case consisted of testimony from a witness who saw the shooter running from the scene and who called 911 to report the incident; testimony from the detective who collected bullet casings from the crime scene; testimony from a medical examiner who reviewed the autopsy records describing the victim's wounds; testimony of the police officer who arrested, interrogated, and obtained defendant's inculpatory statements; and the submission into evidence of the defendant's statements. However, other than defendant's statements to the police, no other evidence directly connected defendant with the murder. The 911 caller's description of the perpetrator did not match defendant's ethnicity or attire, and the ballistic evidence recovered from the scene of the crime did not link defendant to the homicide.

Trial counsel called one witness, defendant's mother, who testified that her son attended special education classes as a

child, was committed to the Bronx Children's Psychiatric Center as a teen, and receives Social Security disability benefits as an adult. However, the court's limiting instruction precluded trial counsel from asking the mother about defendant's psychiatric history, mental issues, and the basis for his receipt of government benefits.[4]

After several requests to review the evidence and for a clarification on *Miranda*, the jury found defendant guilty of murder in the second degree. The court sentenced him to 25 years to life.

## D. Defendant's Motion to Vacate the Conviction

Defendant obtained new counsel who moved to vacate the conviction pursuant to CPL 440.10, arguing that defendant's trial counsel was ineffective based on several enumerated failures and errors. The motion raised trial counsel's failure to provide timely notice pursuant to CPL 250.10, to present evidence of defendant's psychiatric history, to obtain defendant's psychiatric records, to consult an expert to explain the relationship between defendant's psychiatric history and the voluntariness and reliability of his statements, and trial counsel's ignorance of the law regarding the CPL 250.10 notice.

At the hearing, trial counsel testified about his representation of defendant, and explained his decision to not obtain defendant's records. He stated that while he initially intended to obtain defendant's psychiatric records to show that defendant's inculpatory statements were involuntary, he did not pursue this approach because of defendant's objections. He testified that defendant said he was innocent, and "shut [him] down" from pursuing a psychiatric defense. According to trial counsel, defendant "did not want to be portrayed as someone suffering from a psychiatric mental illness." He said he believed that defendant did not want to "end up in a mental institution." He further stated that it was his understanding that defendant "didn't want psychiatric mumbo jumbo, whatever you want to call it, because he felt it would paint him in a bad way."

Trial counsel explained that he then decided to present defendant's mental capacity without the records and as a result decided to forgo obtaining them. Trial counsel claimed that he "stood to gain nothing by getting those records . . . unless [he] was headed towards [putting on] a psychiatric defense." Counsel

---

4. The court also instructed the jury during the charge that "there [was] no evidence concerning any psychological or psychiatric issues."

further claimed: "And my feeling is and has been, and I've done it in many cases, is that you're better off . . . without having so many experts on the witness stand and getting bogged up in that, and just giving the jury a good gut feeling." Thus, trial counsel sought to secure his client's acquittal by demonstrating to the jury that his client was "not playing with a full deck" and arguing on summation that the police took advantage of him.

Trial counsel said he intended to convince the jury that defendant's will was overborne by the police due to his mental history and the affects of the interrogation. According to trial counsel, he wanted to "build" this idea "in the minds of the jury" by demonstrating that defendant "had no work history," "was on SSI," "had a grade school education at the most," "was in special ed," "had some hospitalizations," and was someone "whose mind could be played with." Trial counsel sought to have this history introduced by defendant's mother, who would discuss her son's educational, institutional, and occupational history.

At the hearing, trial counsel admitted that he developed this defense approach without the full benefit of defendant's psychiatric and government records. He stated that he never saw defendant's psychiatric records or Social Security Administration records, and that he did not know the diagnosis contained in those records. Trial counsel also admitted that he did not get the records because he believed that he would have to turn them over to the People, even if he never introduced them at trial or presented a formal psychiatric defense.

> "And you know, yes, the strategy was born in the blind without those [records], but I felt that number one, if I have the records, I got to turn them over. Number two, I don't gain anything by having those records. The fact that he was—his history is what it was should have been good enough."

In an attempt to explain his late filed CPL 250.10 motion, trial counsel stated that he initially declined to file a CPL 250.10 application because he believed at the time that no such application was required where an attorney seeks to present psychiatric evidence through a layperson. Concerned that he might have made an error, he decided to submit a late motion.

Supreme Court denied the motion to vacate, holding that trial counsel pursued a legitimate trial strategy, despite the seemingly insurmountable obstacles posed by defendant.

E. Appellate Division Decision

On appeal, the Appellate Division reversed the denial of the motion to vacate and remanded the matter for a new trial.[5] The majority held that trial counsel's failure to obtain and review the psychiatric records deprived defendant of meaningful representation under federal and state law. As relevant here, the majority determined that trial counsel misapprehended the law pertaining to criminal discovery, and further held that his failure to review the relevant records could not be deemed a reasonable trial strategy. The dissent argued that trial counsel's conduct was not so egregious and prejudicial as to deprive defendant of the right to a fair trial because trial counsel's decision not to obtain the psychiatric records was a reasonable and legitimate trial strategy. The People appeal to this Court by permission of a dissenting Justice of the Appellate Division.

## II. Analysis

The right to effective assistance of counsel in a criminal matter is guaranteed by the Federal and State Constitutions (*see* US Const 6th Amend; NY Const, art I, § 6). In determining whether a defendant has been deprived of effective assistance, a *court must examine whether* "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]).

Essential to any representation, and to the attorney's consideration of the best course of action on behalf of the client, is the attorney's investigation of the law, the facts, and the issues that are relevant to the case (*see Strickland v Washington*, 466 US 668, 690-691 [1984]). An attorney's strategy is shaped in significant part by the results of the investigation stage of the representation. Thus, "[a] defendant's right to representation does entitle him to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial" (*People v Bennett*, 29 NY2d 462, 466 [1972] [internal quotation marks omitted]; *see also People v Droz*, 39 NY2d 457, 462 [1976] ["it is elementary that the right

---

5. Based on its ruling on the motion to vacate, the Appellate Division dismissed, as academic, defendant's appeal from the judgment of conviction and sentence.

to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense"]).[6]

The People argue that trial counsel made a reasonable choice not to use defendant's psychiatric records even though trial counsel had elected to portray defendant as a person with mental problems that made him vulnerable to police interrogation tactics. The People further assert that trial counsel strategically chose not to obtain the documents in order to prevent the People from obtaining certain information concerning defendant's purportedly violent tendencies. More specifically, the People claim that trial counsel's approach to the case was based on his assessment of the options available to him after defendant had precluded him from presenting a psychiatric defense. Under these circumstances, the People argue, trial counsel made a proper choice to introduce critical aspects of defendant's mental state through the mother rather than the records.

The record reveals that trial counsel sought to build a defense based on defendant's mental weakness undermining the voluntariness of his admissions of guilt. Despite the focus on defendant's mental abilities, trial counsel chose to forgo any investigation of the critical documents concerning defendant's mental condition, and instead, sought to present this defense through the testimony of defendant's mother, an obviously biased witness. Regardless of whether the decision to present defendant's condition through his mother's testimony was a valid strategy, it was, as trial counsel admitted at the post-conviction hearing, a "strategy" "born in the blind"—one he admittedly pursued without benefit of the contents of defendant's records.

---

**6.** The American Bar Association has set forth standards articulating this duty to investigate:

> "Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty" (American Bar Association, ABA Standards for Criminal Justice, Prosecution Function and Defense Function, standard 4-4.1 at 181 [3d ed 1993], available at http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/prosecution_defense_function.authcheckdam.pdf [accessed May 21, 2013]).

This is not simply a case of a failed trial strategy (*see Baldi*, 54 NY2d at 146 ["trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness"]). Rather, this is a case of a lawyer's failure to pursue the minimal investigation required under the circumstances. Given that the People's case rested almost entirely on defendant's inculpatory statements, trial counsel's ability to undermine the voluntariness of those statements was crucial. The strategy to present defendant's mental capacity and susceptibility to police interrogation could only be fully developed after counsel's investigation of the facts and law, which required review of records that would reveal and explain defendant's mental illness history, and defendant's diagnosis supporting his receipt of federal Supplemental Security Income benefits.

The People's argument that the contested records would not have helped the defense, regardless of trial counsel's choices, misconstrues the central issue in this case. The issue is not whether trial counsel's choice to have certain documents excluded from the record constitutes a legitimate trial strategy, but whether the failure to secure and review crucial documents, that would have undeniably provided valuable information to assist counsel in developing a strategy during the pretrial investigation phase of a criminal case, constitutes meaningful representation as a matter of law. The utter failure to obtain these documents constituted denial of effective assistance.

Trial counsel did not fully investigate the case and did not collect the type of information that a lawyer would need in order to determine the best course of action for his or her client. It simply cannot be said that a total failure to investigate the facts of a case, or review pertinent records, constitutes a trial strategy resulting in meaningful representation. There is simply no legitimate explanation for this purported strategy (*see generally People v Benevento*, 91 NY2d 708, 712 [1998]; *see also People v Caban*, 5 NY3d 143, 152 [2005]; *People v Rivera*, 71 NY2d 705, 709 [1988]). At a bare minimum, trial counsel should have obtained and reviewed the relevant records, and, after considering the pertinent information contained in the records, considered the contents of those records and pursued a strategy informed by both the available evidence and defendant's concerns. This failure seriously compromised defendant's right to a fair trial (*see generally People v Hobot*, 84 NY2d 1021, 1022 [1995]). Based on the foregoing, the order of the Appellate Division should be affirmed.

SMITH, J. (dissenting). I agree with the majority that counsel's performance was deficient, in that he should have subpoenaed defendant's psychiatric records, and examined them, before trial. As it turns out, however, if the records had been available they would have been worse than useless to defendant—they would have hurt his case. Since a claim of ineffective assistance requires not only a showing of deficient performance, but also a showing that counsel's errors prejudiced defendant's right to a fair trial (*People v Stultz*, 2 NY3d 277, 283-284 [2004]; *People v Benevento*, 91 NY2d 708, 713-714 [1998]), I conclude that ineffectiveness has not been established.

As the majority opinion explains, the case against defendant rested heavily on his confession, and the essence of his defense at trial was that the confession was false. This was not a hopeless defense. The confession was short on detail and some of the details, as the majority opinion points out, were incorrect (*see* majority op at 342 n 3). Defense counsel sought to bolster his attack on the confession by showing that defendant was a mentally limited and disturbed man, vulnerable to manipulation by the police who interrogated him. To this end, counsel elicited the following testimony from defendant's mother:

> "Q And was he in any particular educational program during his schooling?
>
> "A Yes.
>
> "Q What was that?
>
> "A Special Education. . . .
>
> "Q How far did he get in school?
>
> "A Eight.
>
> "Q And where did he go or what did he do after eighth grade?
>
> "A After eighth grade he was in a hospital for five months.
>
> "Q And do you know the name of the hospital?
>
> "A The Bronx Children's Psychiatric Center.
>
> "Q And between the time that he got out of that particular hospital until the time of his arrest, did George have a work history?

"A No.

"Q How did he support himself?

"A SSI.

"Q Is that Social Security Disability?

"A Yes."

The gist of defendant's argument here is that, because of his counsel's failings, he did not have more and better evidence than this—specifically, he did not have the records of his psychiatric history. In theory, those records could have shown, or provided an expert with a basis for opining, that he was, for example, submissive to authority, or easily misled and confused, or perhaps even that he had a history of admitting to things he did not do. Counsel certainly should have subpoenaed the records, looked for such evidence and preserved his right to offer it at trial, and I offer no excuse for his failure to do so.

But the records of defendant's stay when he was 15 years old at the Bronx Children's Psychiatric Center, which were finally obtained by successor counsel and presented on a motion pursuant to CPL article 440 to vacate the judgment of conviction, do not say what defense counsel would have wanted them to say. They do show that he had learning difficulties (as the jury, knowing that he had been in special education and that his schooling ended in eighth grade, presumably inferred) and that his IQ was low. An expert retained by defendant for his posttrial motion prepared a report dwelling on these facts, and others that the expert thought might predispose defendant to making a false confession.

The records also contained, however, facts that the defense expert understandably did not dwell on. They showed that defendant's psychiatric problems included violent—indeed, homicidal—impulses and fantasies. A doctor who interviewed him found a "strong streak of paranoia," and added:

> "He feels that people were against him at school
> and didn't treat him with the respect that he
> deserved and therefore he had to carry a gun and
> act very tough in order to demand respect. He says
> that he wouldn't hesitate to beat people up in order
> to get the respect he deserves."

Later in the same examination, the doctor noted: "What he would like to do in the future is to join the army and travel

around the world and kill people. He says that would be quite enjoyable and exciting." Eight days later, the doctor assessed the adolescent defendant by saying: "George's weak superego certainly will allow him to kill somebody with no remorse if he felt appropriately aggrieved."

It hardly seems necessary to argue that these psychiatric records would not have improved defendant's chances of acquittal. Indeed, his counsel, though perhaps more through luck than skill, achieved what seems the best of all possible worlds from his point of view: the jury knew that defendant had psychiatric problems requiring hospitalization, but never found out what those problems were. As it happens, the jury convicted defendant anyway, but it is hard to imagine a trial that gave him a better chance of acquittal.

In arguing that he was indeed prejudiced by his counsel's failure to obtain and offer psychiatric evidence, defendant suggests that he would have been allowed to offer at trial the favorable parts of the records, and exclude all reference to the unfavorable parts. I think that highly unlikely; such a trial would not have been the fair one to which defendant was entitled, but one decidedly unfair to the People. I do not recommend to the counsel who represents defendant on his retrial the strategy of relying on part of the psychiatric records, in the hope that the jury will never find out about the rest. To pursue that strategy would be to invite an ineffective assistance claim much better, in my judgment, than the one the Court upholds today.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur with Judge RIVERA; Judge SMITH dissents in an opinion; Judge ABDUS-SALAAM taking no part.

Order affirmed.