# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1373**

**KA 13-01618**

PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

                V                             MEMORANDUM AND ORDER

RANDY JOHNSON, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ALAN WILLIAMS OF COUNSEL), FOR DEFENDANT-APPELLANT.

LAWRENCE FRIEDMAN, DISTRICT ATTORNEY, BATAVIA (WILLIAM G. ZICKL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Genesee County Court (Robert C. Noonan, J.), rendered April 25, 2013. The judgment convicted defendant, upon his plea of guilty, of reckless assault of a child.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him, upon his plea of guilty, of reckless assault of a child (Penal Law § 120.02) in connection with a medical diagnosis determining that the child victim had sustained serious physical injury as a result of shaken baby syndrome. Contrary to defendant's contention, the record establishes that his waiver of the right to appeal was made knowingly, intelligently and voluntarily (see *People v Lopez*, 6 NY3d 248, 256). County Court explained that defendant was waiving "almost all issues as to sentence and punishment" including the length of the sentence, and the written waiver of the right to appeal set forth both the specific rights that defendant was waiving and those that were not encompassed by the waiver. The court ascertained that defendant had reviewed the written waiver with his attorney, that he understood it, and that he had no questions for his attorney or the court before signing it (see *People v Ramos*, 7 NY3d 737, 738; *People v Bridenbaker*, 112 AD3d 1379, 1379; cf. *People v Bradshaw*, 18 NY3d 257, 262). We therefore conclude that defendant's valid waiver of the right to appeal encompasses his contention that the sentence is unduly harsh and severe (see *Lopez*, 6 NY3d at 256; *People v Connolly*, 114 AD3d 1231, 1231-1232, *lv denied* 23 NY3d 961). In any event, that contention is without merit.

Based upon defendant's explanation during his plea colloquy of his actions, i.e., that he had quickly grabbed the victim from the

basinet on one occasion and had played with him by "tossing" him in a spinning motion, the court conducted a presentence hearing to obtain information regarding shaken baby syndrome. The People presented the testimony of the victim's treating physician, who is board certified in emergency pediatric care and pediatric child abuse. She explained that the injuries required more force to cause an acceleration and deceleration of the victim's head than would have occurred by the actions defendant described. She denied on cross-examination that certain medical conditions that the victim had were a contributing factor to his injuries. She acknowledged, however, that one of those medical conditions, i.e., macrocephali, was a source of controversy in the medical community with respect to shaken baby syndrome but she explained that there was no medical evidence to support the theory that macrocephali contributed to a symptom of shaken baby syndrome, i.e., subdural hematomas. In any event, the treating physician explained that the victim lacked spinal fluid between the skull and the brain, which is the condition that some physicians believe causes tension on the veins between the skull and the brain, thereby causing the veins to rupture, resulting in subdural hematomas. She also denied that the victim's retinal hemorrhages were related to premature retinopathy because that condition had healed before the victim sustained the retinal hemorrhages.

Following the hearing, the court denied defense counsel's request for an adjournment of sufficient duration to permit him to consult with an expert to explore the possibility whether the treating physician's testimony could be contradicted, noting that defense counsel had effectively cross-examined the treating physician. Contrary to defendant's contention, we conclude that the court did not abuse or improvidently exercise its discretion in denying the requested adjournment of sentencing (*see People v Walker*, 115 AD3d 1357, 1357, *lv denied* 23 NY3d 1069).

We reject defendant's further contention that he was denied effective assistance of counsel based upon defense counsel's failure to consult with, or provide the testimony of, an expert to rebut the testimony of the victim's treating physician with respect to shaken baby syndrome. Defendant has failed to meet his burden of establishing that "such expert testimony was available, that it would have assisted the [court] in its determination or that he was prejudiced by its absence" (*People v Woolson*, 122 AD3d 1353, 1354 [internal quotation marks omitted]; *see People v West*, 118 AD3d 1450, 1451, *lv denied* 24 NY3d 1048). Moreover, the record establishes that defense counsel consulted with medical professionals and effectively cross-examined the treating physician. Viewing "the evidence, the law, and circumstances of [this] case, . . . in totality and as of the time of the representation" (*People v Baldi*, 54 NY2d 137, 147), we conclude that defendant received meaningful representation (*cf. People v Oliveras*, 21 NY3d 339, 348).

In appeal No. 2, defendant contends that the court erred in ordering restitution in the amount of $7,378 to be paid to the Genesee County Department of Social Services (DSS) for the cost of providing foster care for the victim. Inasmuch as that item of restitution

affects the legality of the sentence, the contention is not encompassed in the waiver of the right to appeal (*see People v Boatman*, 110 AD3d 1463, 1463-1464, *lv denied* 22 NY3d 1039; *see generally People v Seaburg*, 74 NY2d 1, 9).  We agree with defendant that the court erred in determining that DSS was the victim's "guardian" (*see* Executive Law § 621 [6]), and therefore qualified to obtain restitution for the cost of providing foster care as a "victim" pursuant to Penal Law § 60.27.  We therefore modify the order accordingly.

It is well established that restitution may be required for expenses that "were not voluntarily incurred, but stem from legal obligations that are directly and causally related to the crime" (*People v Cruz*, 81 NY2d 996, 998; *see People v McCarthy*, 83 AD3d 1533, 1535, *lv denied* 17 NY3d 819; *People v McDaniel*, 219 AD2d 861, 861).  Here, however, the foster care expenses are the result of the placement of the victim in the care and custody of DSS pursuant to a proceeding in Family Court (*see* Family Ct Act § 1055 [1]), and thus DSS is performing its statutory duty pursuant to Social Services Law § 398 (2) (b).  We note that the Legislature has specifically provided that certain governmental agencies and entities are entitled to restitution when performing their statutory duties (*see* Penal Law § 60.27 [9], [10], [13]).  Section 60.27 (9), for example, was enacted to permit restitution to police agencies for unrecovered funds used in undercover drug purchases following the decision in *People v Rowe* (152 AD2d 907, 909, *affd* 75 NY2d 948, 949).  In *Rowe*, we determined that, absent legislative intent to include a city police department as a "victim," such funds could not be recovered by means of a court order of restitution.  Similarly, here, in the absence of legislative intent that DSS is a "victim" pursuant to Penal Law § 60.27, we decline to impose an obligation on defendant to pay restitution for the expenditure of public funds for providing foster care for the victim.

Entered:  February 6, 2015                    Frances E. Cafarell
                                              Clerk of the Court