People v Mowry (2026 NY Slip Op 01093)

People v Mowry

2026 NY Slip Op 01093

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

113290 CR-24-2012
[*1]The People of the State of New York, Respondent,
vAdam M. Mowry, Appellant.

Calendar Date:January 12, 2026

Before:Garry, P.J., Clark, Pritzker, Powers and Corcoran, JJ.

Angela Kelley, East Greenbush, for appellant.
Jeremy Hourihan, District Attorney, Watkins Glen, for respondent.

Garry, P.J.
Appeals (1) from a judgment of the County Court of Schuyler County (Matthew Hayden, J.), rendered October 21, 2021, upon a verdict convicting defendant of the crime of driving while intoxicated, and (2) by permission, from an order of said court, entered December 3, 2024, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.
In 2020, defendant was charged by indictment with one count of driving while intoxicated as a felony for operating an all-terrain vehicle (hereinafter ATV) on a public highway in an intoxicated condition. Following a jury trial, he was convicted as charged, and he was later sentenced to a prison term of 1 to 3 years, with a recommendation that he be allowed to participate in a shock incarceration program. Defendant's subsequent CPL article 440 motion to vacate the judgment of conviction upon the ground of ineffective assistance of counsel was denied. Defendant appeals from the judgment of conviction and, with this Court's permission, from the denial of his motion.

To begin, the verdict is supported by legally sufficient evidence and is not against the weight of the evidence. As charged here, a person is guilty of driving while intoxicated when he or she "operate[s] a motor vehicle while in an intoxicated condition" (Vehicle and Traffic Law § 1192 [3]; see Vehicle and Traffic Law § 1193 [1] [c] [i]).[FN1] A driver is intoxicated when he or she "has voluntarily consumed alcohol to the extent that he [or she] is incapable of employing the physical and mental abilities [that] he [or she] is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d 419, 428 [1979], appeal dismissed 446 US 901 [1980]; accord People v Erfurt, 234 AD3d 1120, 1121 [3d Dept 2025], lv denied 43 NY3d 1008 [2025]; People v Farnsworth, 134 AD3d 1302, 1304 [3d Dept 2015], lv denied 27 NY3d 1068 [2016]).
The People's proof demonstrated that, in the late hours of one Friday in February 2020, two unknown snowmobilers found defendant lying in the middle of a public highway, without a helmet, with an ATV and affixed plow approximately 200 feet away on the downhill slope. Three young men in a truck came upon the scene to witness the snowmobilers assisting defendant back onto his ATV. Those witnesses testified and described defendant as moving slowly, swaying, having slow slurred speech, stumbling and falling, and they noticed a heavy odor of alcohol coming from him, even without exiting their truck. The snowmobilers left, and the three men in the truck observed defendant start the ATV and rapidly speed away from the scene, swerving from side to side over several roads. They followed him, concerned for his safety and the safety of others, until he stopped in the middle of the highway about a quarter of a mile away. The men stayed nearby, turning on their flashers to warn others of the dangerous traffic condition created by defendant, and another passerby offered [*2]to call 911.
Law enforcement arrived approximately 45 minutes later. The responding sergeant, with 10 years of experience and training in recognizing the signs of intoxication, testified that he observed defendant sitting on the ATV, seemingly asleep, and immediately perceived a strong odor of alcohol emanating from him. Upon waking him, the sergeant observed that defendant had glossy eyes, swayed while seated, was generally sluggish and slow to respond and was unable to report where he was. However, once advised that he was the subject of an intoxicated driving investigation, defendant attempted to start the ATV to flee the scene. It was later determined that the ATV had sufficient fuel and was operable. Defendant belligerently refused to submit to field sobriety tests and, after sufficient warnings, chemical tests. He was generally combative with law enforcement during and after his arrest, although that behavior began to improve as the evening wore on. The jury was able to observe some of such behavior firsthand, as well as defendant's demeanor generally, via body camera footage of him at the station. Once at the station, defendant explained to law enforcement that he had been plowing on the ATV all day, that he had "cabin fever," likes to "let loose" on Fridays and that he had consumed alcohol at a local bar and restaurant that evening. Following his release, defendant messaged two friends affiliated with law enforcement, inquiring as to one, "[h]ow much trouble am I in" if "[I] wasn't driving it when the sheriff[ ] got there," and reporting to the other, "I know I f***ed up."
For his part, defendant proffered the testimony of one witness, the neighbor who lent him the ATV. The neighbor testified that he saw defendant at the aforementioned bar and restaurant at some point "middle evening" and, after a brief conversation, suggested that defendant should take the ATV back to the house because it was cold, dark and snowy. That neighbor had "no idea" if defendant had been drinking at that establishment or otherwise. At some point not long after defendant's departure, some younger gentlemen arrived at the restaurant on snowmobiles.
Initially, defendant's legal sufficiency argument is preserved only to the extent that he challenges the element of intoxication, not operation (see People v Gray, 86 NY2d 10, 20 [1995]; People v Farnsworth, 134 AD3d at 1303). Viewing the facts in a light most favorable to the People, the testimony of both law enforcement and disinterested witnesses regarding defendant's appearance, odor and actions, coupled with his refusal to submit to a chemical test, provided a valid line of reasoning and permissible inferences from which a rational jury could conclude that defendant was intoxicated beyond a reasonable doubt (see Vehicle and Traffic Law § 1194 [2] [f]; People v Beyer, 21 AD3d 592, 594-595 [3d Dept 2005], lv denied 6 NY3d 752 [2005]; see generally People v Danielson, 9 NY3d 342, 349 [2007]). As for defendant's weight [*3]of the evidence challenge, given the evidence that could suggest defendant was in an ATV accident and inferentially suffering from some injury that caused his aberrant behavior, another verdict would not have been unreasonable (see People v McRobbie, 97 AD3d 970, 971-972 [3d Dept 2012], lv denied 20 NY3d 934 [2012]; People v Johnson, 70 AD3d 1188, 1189-1190 [3d Dept 2010]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). However, when we weigh the relative strength of conflicting inferences that may be drawn from the evidence, we readily find that defendant's conviction is supported by the weight of the credible evidence (see Vehicle and Traffic Law § 1194 [2] [f]; People v McRobbie, 97 AD3d at 971-972; People v Johnson, 70 AD3d at 1189-1190; People v Bowers, 201 AD2d 830, 830 [3d Dept 1994], lv denied 83 NY2d 909 [1994]; see also People v Erfurt, 234 AD3d at 1121-1123; People v Olson, 126 AD3d 1139, 1140-1141 [3d Dept 2015], lv denied 25 NY3d 1169 [2015]; see generally People v Romero, 7 NY3d 633, 643-644 [2006]).
Neither of defendant's evidentiary challenges are properly before us. As noted, defendant reached out to friends affiliated with law enforcement following the incident and made a number of statements to them concerning the subject incident. Although defendant moved, pretrial, to preclude those exchanges on the ground that the messages were belatedly disclosed in general, as well as ambiguous and highly prejudicial, he lodged a CPL 710.30 notice argument regarding same for the first time in the midst of trial. Instead of holding a midtrial hearing on the applicability of the notice requirement (see generally CPL 710.30 [1] [a]), County Court fashioned a compromise whereby only those limited messages that defendant agreed were not subject to CPL 710.30 were admitted. By his consent to this process, defendant waived his present preclusion argument (see People v Moore, 232 AD3d 1299, 1300 [4th Dept 2024], lv denied 43 NY3d 945 [2025]; see generally People v Ahmed, 66 NY2d 307, 311 [1985]). Any foundation argument as to these messages is unpreserved (see CPL 470.05 [2]; People v Sutton, 174 AD3d 1052, 1054 [3d Dept 2019], lv denied 34 NY3d 954 [2019]; People v Saylor, 173 AD3d 1489, 1491 n 2 [3d Dept 2019]).
Turning to the collateral proceeding, we first find that County Court acted well within its discretion in limiting the scope of the CPL article 440 hearing to genuine, material disputes of nonrecord fact and in summarily denying those aspects of defendant's motion that were contradicted by the record, unsupported by any evidence or sworn allegations, or that could not otherwise form the basis for postconviction relief (see CPL 440.30 [4]; People v Jones, 24 NY3d 623, 635 [2014]; People v Dorvil, 234 AD3d 1106, 1118 [3d Dept 2025], lv denied 44 NY3d 982 [2025]). As the court explained, several of the allegations underlying defendant's ineffective-assistance claim were wholly speculative, including the assertion that trial counsel [*4]was ineffective for failing to investigate the identity of the snowmobilers or the relevance of defendant's purported mental illness, where defendant failed to make any showing that such investigation was feasible or that it would have yielded relevant, admissible and favorable evidence (compare People v Oliveras, 21 NY3d 339, 348 [2013]; People v Lanier, 191 AD3d 1094, 1096 [3d Dept 2021]).[FN2] In the absence of any proof of an actual head injury, there was no basis upon which to put forth expert testimony regarding same, nor was there any proffer as to what that testimony would be (see People v Dorvil, 234 AD3d at 1118; People v Hamms, 55 AD3d 1142, 1145 [3d Dept 2008], lv denied 11 NY3d 925 [2009]). Other claims are directly contradicted by the record, which demonstrates that counsel engaged in appropriate motion practice and was adequately prepared. Counsel was under no obligation to proceed with a Huntley hearing (see People v Sposito, 193 AD3d 1236, 1238 [3d Dept 2021], affd 37 NY3d 1149 [2022]), and defendant has failed to identify any specific admitted statements that were subject to suppression or otherwise set forth a colorable claim of coercion (see People v Reichel, 211 AD3d 1090, 1091-1092 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]; People v Machia, 206 AD3d 1272, 1278 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]). Defendant has likewise proffered no factual predicate of unlawful police conduct that would have warranted Mapp, Dunaway or Ingle hearings (see People v Watts, 215 AD3d 1170, 1175 [3d Dept 2023]; People v Phelan, 82 AD3d 1279, 1282 [3d Dept 2011], lv denied 17 NY3d 799 [2011]). Defendant has also failed to show the absence of explanation for counsel's failure to object to certain alleged hearsay and bolstering testimony, as such objections would have had little to no chance of success and trial counsel may well have concluded that an objection would have only drawn unwanted attention to that evidence (see People v Reinfurt, 241 AD3d 1015, 1025 [3d Dept 2025], lv denied ___ NY3d ___ [Jan. 12, 2026]; People v Henley, 232 AD3d 1117, 1122 [3d Dept 2024], lv denied 43 NY3d 930 [2025]). The same may be said for the prosecutor's challenged summation remarks, which were also fair comment on the evidence or responsive to defendant's closing (see People v Rudge, 185 AD3d 1214, 1217 [3d Dept 2020], lv denied 35 NY3d 1070 [2020]; People v Horton, 181 AD3d 986, 996 [3d Dept 2020], lv denied 35 NY3d 1045 [2020]).
As for the claims that were the subject of the CPL article 440 hearing (see CPL 440.30 [5], [6]), the hearing evidence established that trial counsel met with defendant on multiple occasions, discussed potential defenses, advised defendant of the risks of testifying in a case involving substantial proof of both intoxication and operation and reasonably pursued a trial strategy designed to create doubt as to the cause of defendant's behavior rather than advancing a patently untenable denial of operation, as defendant desired. [*5]County Court correctly concluded that trial counsel's strategic choice fell well within the bounds of meaningful representation and was not subject to second-guessing under settled law (see People v Satterfield, 66 NY2d 796, 799-800 [1985]; People v Rickett, 244 AD3d 1284, 1289 [3d Dept 2025]). We also cannot find that defendant was deprived of his right to testify by that strategy, where the credited evidence showed that counsel advised defendant that the decision was ultimately his, defendant voiced no objection with respect to that decision at trial when provided the express opportunity to do so, and the proposed testimony — when measured against the People's proof and defendant's own hearing testimony — would have been highly damaging to defendant's credibility and unlikely to affect the verdict in his favor. Overall, the record before us reflects a coherent defense theory based on existent facts, appropriate motion practice and effective advocacy throughout trial, and denial of defendant's CPL article 440 motion was therefore warranted.
Clark, Pritzker, Powers and Corcoran, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Defendant stipulated to the fact that he had been convicted of the requisite prior offense (see Vehicle and Traffic Law § 1193 [1] [c] [i]), and there is no dispute that the subject ATV was a motor vehicle (see Vehicle and Traffic Law § 2404 [5]) or that the subject roadway was a public highway (see Vehicle and Traffic Law § 1192 [7]).

Footnote 2: We note that defendant's allegations of failure to investigate are directed exclusively at trial counsel, who was substituted in over a year following the subject incident.