People v Fernandez
2026 NY Slip Op 03915
June 23, 2026
Court of Appeals
Troutman, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,
v
Andre Fernandez, Appellant.

Decided on June 23, 2026
No. 61

Rosemary Herbert, for appellant.
Vincent Rivellese, for respondent.

Troutman, J.

[*1]
Defendant contends that his trial counsel was ineffective for failing to investigate his mental health and substance abuse history in connection with a challenge to the voluntariness of defendant's statements to police. We conclude that the lack of further investigation into these issues did not render counsel ineffective. Counsel's choice to proceed with an alternative strategy was reasonable under the circumstances, and counsel otherwise provided meaningful representation.
I.
Defendant has a long history of mental health issues and substance abuse issues, leading to repeated hospitalizations and multiple diagnoses of mental illness. In 2004, defendant was charged for making a false police report in another state, but psychologists determined that he met the criteria for not guilty by reason of insanity.
In February 2007, defendant contacted the Bronx Homicide Squad and told them he had information to provide regarding two unsolved homicides. At defendant's request, detectives picked defendant up. While at the Bronx Homicide Squad's office, defendant gave two written statements and one videotaped statement in which he confessed to his involvement in the homicides. Defendant was provided with Miranda warnings before those statements and responded that he understood his rights and wished to speak to police. Defendant testified before the [*2]grand jury, against the advice of his assigned attorney, that an assistant district attorney had promised him immunity in exchange for providing false information about his involvement in the homicides, and that he believed he would receive immunity when he provided his statements.
Based almost entirely on the statements defendant provided, he was thereafter charged with two counts of murder in the second degree, among other crimes. Defendant's assigned counsel later moved to suppress defendant's statements. At a pretrial hearing, counsel argued that defendant provided those statements while operating under a reasonable belief that he would be given immunity in exchange for his information, and therefore the statements were involuntary. Counsel supported that argument with a variety of evidence, including, among other things, defendant's refusal to offer any statements until he could speak with an assistant district attorney (ADA), an unrecorded conversation with an ADA, and a note in the police file in defendant's handwriting stating that he would need immunity and payment in exchange for his information. Counsel also relied upon defendant's Miranda waiver form, on which he crossed out "defendant" and wrote in "C.I.," for confidential informant. Defendant also testified at the suppression hearing that he had been offered immunity by the ADA during the unrecorded conversation.
The suppression court denied defendant's motion, finding that defendant's version of events was not credible and instead crediting the testimony of the People's witnesses that no offer of immunity had ever been made to defendant. At trial, counsel similarly argued to the jury that defendant's statements were involuntary because defendant was led to believe he would receive immunity, and defendant testified to that effect. The jury convicted defendant of two counts of murder in the second degree. Directly prior to sentencing, counsel became aware of the 2004 out-of-state case in which defendant was found to meet the criteria for not guilty by reason of insanity. At sentencing, counsel requested a CPL article 730 competency examination at defendant's behest. Counsel also moved to be relieved and for new counsel to be assigned to explore the issue of whether counsel was "incompetent for not bringing this issue to court prior to the trial." That motion was denied, and the court sentenced defendant to two consecutive terms of 25 years to life in prison.
In 2019, while his direct appeal was still pending, defendant moved to vacate the judgment pursuant to CPL 440.10. He argued that his trial counsel was ineffective for failing to investigate his history of mental health disorders and substance abuse. The court ordered a hearing, at which defendant's trial counsel testified. Counsel asserted that although he was aware of defendant's mental health and substance abuse history, defendant "had given [counsel] such a clear picture" of what happened that "was supported by documentary evidence" and that in counsel's "50 years of practicing [he had] never had a case where [he had] seen, or known of a case where [he had] seen that a person" who shared defendant's mental health diagnosis successfully suppress a statement on that ground.
The hearing court denied defendant's CPL 440.10 motion. The court observed that counsel pursued a coherent and legitimate defense strategy based on his conversations with defendant and the evidence at hand, and that based on that strategy, it was reasonable for counsel to choose not to further investigate defendant's mental health and substance abuse history. On appeal, the Appellate Division considered the 2010 judgment and the CPL 440.10 order together and affirmed both (236 AD3d 527 [1st Dept 2025]). The Court reasoned that "[a]lthough defendant used drugs and had psychiatric problems, those issues were not likely to undermine a finding of voluntariness here, where the videotaped statement itself provided the most direct evidence of defendant's voluntary waiver of his Miranda rights" (id. at 528). A Judge of this Court granted defendant leave to appeal (43 NY3d 1055 [2025]). We now affirm.
II.
"In determining whether a defendant has been deprived of effective assistance, a court must examine whether 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation' " (People v Oliveras, 21 NY3d 339, 346 [2013], quoting People v Baldi, 54 NY2d 137, 147 [1981]). "In applying this standard, counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Benevento, 91 NY2d 708, 712 [1998]). "Accordingly, a reviewing court must avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis' " (id., quoting Baldi, 54 NY2d at 146). "Rather, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" (id. [internal quotation marks omitted]). "As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance" (id. at 712-713).
Here, counsel pursued a reasonable and legitimate strategy under the circumstances and the evidence, and counsel's lack of further investigation into defendant's mental health and substance abuse history in light of the evidence he had available did not deprive defendant of meaningful representation. Defendant's contrary position, accepted by our dissenting colleague, amounts to second-guessing, "with the clarity of hindsight," how the defense "might have been more effective," without proving that counsel was ineffective in the first place (Benevento, 91 NY2d at 712). The dissent repeatedly makes arguments regarding what "defense counsel could have" done with more information, but our standard does not require us to evaluate what defense counsel could have done so long as what defense counsel has done is reasonable under the circumstances (dissenting op at 7-8).
In People v Oliveras, this Court held that counsel was ineffective for failing to "conduct an appropriate investigation of records critical to the defense" (21 NY3d at 341). There, however, unlike here, "trial counsel sought to build a defense based on defendant's mental weakness undermining the voluntariness of his admissions of guilt" (id. at 347). Oliveras's counsel "announced his intention to present [the defendant's] psychiatric records" as a part of this defense and had the court issue judicial subpoenas for those records, but then failed to execute those subpoenas or review "these or other documents related to defendant's mental illness or condition" (id. at 342). Accordingly, we held "[i]t simply cannot be said that a total failure to investigate the facts of a case, or review pertinent records, constitutes a trial strategy resulting in meaningful representation" (id. at 348 [emphasis added]). In other words, in Oliveras, the strategy that defense counsel sought to pursue could not be fully developed without investigation into the defendant's psychiatric records.
Here, by contrast, counsel's chosen defense did not necessarily require review of defendant's mental health or substance abuse records. Counsel's strategy was not "born in the blind," as in Oliveras (id. at 347), because contrary to the dissent's conclusion, counsel could make a reasonable choice as to strategy without conducting further investigation into defendant's mental health and substance abuse history (see dissenting op at 10). Counsel knew that defendant had been diagnosed with mental health disorders and had an active addiction at the time of his statements to police. But based on counsel's review of the evidence—including, among other things, defendant's contacting of Bronx Homicide Squad on his own volition, his refusal to speak with officers until he could discuss immunity with the ADA, and his written statements and Miranda forms indicating his belief that he was acting as a confidential informant in exchange for immunity and payment—counsel pursued an alternative legitimate strategy: that defendant was operating under a reasonable belief that he would be provided immunity in exchange for his information. The dissent's observation that police officers and prosecutors denied that defendant had been promised immunity (see dissenting op at 1-2, 9) does not render counsel's chosen strategy unreasonable, especially because defendant's conversation with the ADA during which the ADA allegedly offered defendant immunity was not recorded or memorialized in any writing. Furthermore, when the prosecutor who subsequently interviewed defendant on video stated that law enforcement was "not making any promises" to defendant, defendant responded "nothing in writing," which counsel repeatedly highlighted to support his chosen strategy.
In sum, there is no constitutional requirement that counsel fully exhaust every avenue of investigation for every conceivable defense. We signal no retreat from Oliveras, nor its principles that appropriate investigation of records critical to a chosen defense is necessary, and under certain circumstances, counsel's investigation of a defendant's mental health history is required. We conclude only that under the circumstances presented here, further investigation was not required, and counsel provided defendant with meaningful representation.
Accordingly, the order of the Appellate Division should be affirmed.
Rivera, J. (Dissenting):

Defense counsel pursued a strategy based on defendant's narrative that police and prosecutors had promised him immunity and money for admitting his involvement in two murders. Counsel stuck to this strategy despite officers' and prosecutors' denials that they had ever promised defendant immunity or money and despite a video recording of a prosecutor telling defendant that no promises had been made to him and defendant admitting the same. Supreme Court denied defendant's motion to suppress his inculpatory statements, concluding that defendant's narrative was "concocted," "wildly absurd," and "patently unbelievable." Defense counsel was undeterred by this failure and deployed the same strategy at trial. It failed again, and the jury convicted defendant of two counts of second-degree murder.
Even though defense counsel was aware that defendant was diagnosed with a serious mental illness, struggled with long-term substance abuse, and had used a mind-altering illegal drug several hours before making his inculpatory statements, counsel did not investigate the depth of defendant's mental illness or substance abuse history, or the potential impact of his illness and active drug use on his state of mind when he spoke to law enforcement. Yet defendant's mental health disorder is associated with hallucinations and delusions, which, as an expert later opined, could have made defendant more susceptible to coercive law enforcement tactics or more likely to believe he had secured immunity or compensation, even when no such promise had been made and no matter how implausible the belief. As the expert further opined, defendant's substance use likely induced or exacerbated his mental illness symptoms and contributed to his impaired mental state when he made the admissions.
Why did counsel choose to forego investigation into defendant's mental health and substance abuse history and its possible effects on his interactions with law enforcement? We need not guess, because counsel explained at the postconviction CPL 440.10 hearing that he based his choice of strategy on his observations of defendant and that he knew of no case where testimony was suppressed due to defendant's specific mental disorder. Defense counsel is not a mental health expert, and yet he formed a conclusion about defendant's mental status without the benefit of his full medical records or a psychological evaluation.
Under our State Constitution, defense counsel renders ineffective assistance when "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation," establish that counsel did not provide "meaningful representation" (People v Benevento, 91 NY2d 708, 712 [1998] [internal quotation marks omitted], quoting People v Baldi, 54 NY2d 137, 147 [1981]). "While the inquiry focuses on the quality of the representation provided to the accused, [a] claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (id. at 714). We have explained that "counsel's performance will not be considered ineffective, even if unsuccessful, as long as it reflects an objectively reasonable and legitimate trial strategy under the circumstances and evidence presented" (People v Berroa, 99 NY2d 134, 138 [2002]). As a result, "to establish ineffective assistance, a defendant must 'demonstrate the absence of strategic or other legitimate explanations' for counsel's allegedly deficient conduct" (People v Caban, 5 NY3d 143, 152 [2005], quoting People v Rivera, 71 NY2d 705, 709 [1988]).
"Essential to any representation, and to the attorney's consideration of the best course of action on behalf of the client, is the attorney's investigation of the law, the facts, and the issues that are relevant to the case" (People v Oliveras, 21 NY3d 339, 346 [2013]). Thus, it is well-settled that a defendant is entitled "to have counsel conduct appropriate investigations, both factual and legal," to develop a defense and "to allow [counsel] time for reflection and preparation for trial" or other resolution of the matter (People v Bennett, 29 NY2d 462, 466 [1972] [internal quotation marks omitted]; Oliveras, 21 NY3d at 346 [same]; see People v Droz, 39 NY2d 457, 462 [1976] ["(I)t is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense"]). In this regard, we have noted that "[a]n attorney's strategy is shaped in significant part by the results of the investigation stage of the representation" (Oliveras, 21 NY3d at 346).
The United States Supreme Court has long recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (Strickland v Washington, 466 US 668, 691 [1984]). In other words, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable [only] to the extent that reasonable professional judgments support the limits on investigation" (id. at 690-691 [emphasis added]; see Wiggins v Smith, 539 US 510, 533 [2003]). Thus, a particular "decision not to investigate . . . must be directly assessed for reasonableness in all the circumstances" (Wiggins, 539 US at 533 [internal quotation marks omitted], quoting Strickland, 466 US at 691). In evaluating the reasonableness of counsel's investigatory decisions, "inquiry into counsel's conversations with the defendant" or "the defendant's own statements or actions" may be "critical" (Strickland, 466 US at 691). Ultimately, counsel cannot "make a reasonable strategic choice" among alternative defense theories where their decision not to conduct a particular investigation was itself unreasonable (see Wiggins, 539 US at 536).
In People v Oliveras, we concluded that the defendant's trial counsel deprived him of meaningful representation where counsel "fail[ed] to pursue the minimal investigation required under the circumstances" (21 NY3d at 348). There, the prosecution's case "rested almost entirely on [the] defendant's inculpatory statements" (id.), and trial counsel had made clear to the court that he "sought to build a defense based on [the] defendant's mental weakness undermining the voluntariness of his admissions of guilt" (id. at 347). However, counsel thereafter "chose to forego any investigation of the critical documents concerning [the] defendant's mental condition" (id.), even though the court had already issued judicial subpoenas for the defendant's psychiatric records (id. at 342). Instead, counsel "present[ed] this defense through the testimony of defendant's mother, an obviously biased witness" (id. at 347). We reasoned that "[t]he strategy to present [the] defendant's mental capacity and susceptibility to police interrogation could only be fully developed after counsel's investigation of the facts and law, which required review of records that would reveal and explain [the] defendant's mental illness history" (id. at 348). Thus, "[r]egardless of whether the decision to present [the] defendant's condition through his mother's testimony was a valid strategy" (id. at 347), counsel's utter "failure to secure and review crucial documents, that would have undeniably provided valuable information to assist counsel in developing a strategy during the pretrial investigation phase of a criminal case" amounted to ineffective assistance (id. at 348). We further explained:
"Trial counsel did not fully investigate the case and did not collect the type of information that a lawyer would need in order to determine the best course of action for [their] client. It simply cannot be said that a total failure to investigate the facts of a case, or review pertinent records, constitutes a trial strategy resulting in meaningful representation. There is simply no legitimate explanation for this purported strategy. At a bare minimum, trial counsel should have obtained and reviewed the relevant records, and, after considering the pertinent information contained in the records, considered the contents of those records and pursued a strategy informed by both the available evidence and [the] defendant's concerns" (id. [internal citations omitted]).
Here too, defense counsel's lack of adequate investigation into the facts and law relevant to the case resulted in a fundamental professional failure that falls below our standard for meaningful representation. Defense counsel could not make a reasonable choice among alternative defense strategies for the simple reason that he did not possess all the available information necessary to assess defendant's options (see id. at 346-348; Wiggins, 539 US at 533, 536; Strickland, 466 US at 690-691). This is not a case where counsel did the best he could after confirming the facts. Rather, counsel chose not to look for more information than what was before him, and no one disputes that if he had tried, he could have obtained defendant's medical records revealing his extensive history of mental health and substance abuse issues.
That history is telling, as the majority acknowledges (see majority op at 2). Indeed, defendant has long reported auditory hallucinations, delusions, paranoid ideation, and manic symptoms, among others, leading to multiple diagnoses of psychiatric disorders and repeated hospitalizations. After previously being charged for making a false report of a crime in another state, defendant was evaluated by three doctors, who concluded that he met the criteria for not guilty by reason of insanity. Defendant's substance abuse history is similarly extensive, as he has used mind-altering drugs that lead to cognitive impairment for decades. In the days leading up to defendant's inculpatory admissions in this case, he engaged in substantial drug use. The detectives who picked defendant up reported that he [*3]appeared "excitable," "agitated," and "paranoid," and "rambled on about this . . . [and] that." In his videotaped interview with a prosecutor, defendant revealed his mental health diagnoses. The next day, at defendant's arraignment, his appointed attorney informed the court that defendant "need[ed] . . . medical attention."FN1 Within days of his arrival to Rikers Island, defendant reported experiencing auditory hallucinations. He was evaluated by mental health staff, and observed to be paranoid, anxious, and irritable with rapid speech. Over the next two years as he awaited trial, defendant continued to suffer from paranoia and hallucinations, for which he was prescribed mental health medications.
With this history in hand, defense counsel could have properly assessed alternative theories of defense. Counsel could have adopted a different strategy, and argued that defendant's mental illness and active substance use affected his ability to understand and appreciate the consequences of waiving his Miranda rights (see Miranda v Arizona, 384 US 436, 478-479 [1966]). Counsel could also have argued that defendant's mental illness, combined with his drug use, made him uniquely susceptible to official coercion, and that law enforcement, aware of defendant's impaired mental state, took advantage of it to manipulate him into believing that he would receive immunity and money in exchange for his incriminating statements (see Colorado v Connelly, 479 US 157, 164-165 [1986] [explaining that "mental condition is surely relevant to an individual's susceptibility to police coercion" and can be a "significant factor" in the totality-of-circumstances voluntariness calculus but can never conclude the due process inquiry "by itself and apart from its relation to official coercion"]). Along these lines, counsel could have sought to establish that what would otherwise appear unreasonable—a promise of complete immunity and money in exchange for defendant's inculpatory statements—was reasonable to defendant under the circumstances because of his mental condition. Therefore, an investigation into defendant's mental health and substance abuse history could only have strengthened whatever strategy defense counsel chose to pursue to suppress defendant's statements or at trial.
Indeed, long-term substance abuse and the drugs defendant used are associated with cognitive impairment and known to affect decision making and insight (see e.g. Substance Abuse and Mental Health Services Administration (SAMHSA), Chronic Substance Use and Cognitive Effects on the Brain: An Introduction [Summer 2016], available at https://library.samhsa.gov/sites/default/files/sma16-4973.pdf [last accessed June 5, 2026]). Defendant's substance use history was particularly relevant given that he had used a mind-altering drug only several hours before speaking to the detectives and prosecutors. In this regard, defendant's forensic and clinical psychologist expert in the CPL 440.10 proceeding opined that defendant's substance use likely induced or exacerbated his mental illness symptoms and contributed to his impaired mental state when he interacted with law enforcement.
Investigation into defendant's mental health and substance abuse history would have revealed important information relevant to a defense strategy clearly in need of bolstering. Defendant's narrative pitted his version of events against that of the police and prosecutors, who denied making any promise in exchange for defendant's statements about his involvement in the murders. As Supreme Court found when it denied defendant's motion to suppress, defendant's story was "wildly absurd" and "patently unbelievable." Counsel surely was aware that he had an uphill battle in convincing the court that every officer and prosecutor was lying under oath and that defendant was credible. Defendant's serious mental health impairments supported bridging the gap between the implausible and what defendant, with his conditions, might have deemed to be the truth. Contrary to the majority's characterization, the other "evidence" of law enforcement's promises was weak, if not wholly far-fetched, and accordingly failed to persuade the suppression court (see majority op at 3, 6-7). This "evidence," along with defendant's own account, were directly contradicted by the officers' and prosecutors' unequivocal denials of ever having made any promises to defendant. The majority fails to recognize that defense counsel's reliance on defendant's acknowledgment that no written promises had been made to him was seriously undermined by the prosecutor's unqualified assertion that law enforcement was "not making any promises to defendant," which encompassed all types of promises (see majority op at 7).
In any event, counsel's deficiency was not that he chose this particular defense strategy, but that he did so without conducting an adequate investigation to confirm that it was a reasonable informed strategy (see Oliveras, 21 NY3d at 347-348). Our standard for meaningful representation requires that counsel undertake an adequate investigation of the relevant facts and law in order to identify a defendant's options, and thereafter, thus informed, [*4]adopt a reasonable defense strategy (see id. at 346-348; Wiggins, 539 US at 533, 536; Strickland, 466 US at 690-691). The majority fails to contend with this fundamental professional duty and instead concludes that counsel's chosen strategy was reasonable (see majority op at 2, 5-7). But that gets the standard backwards.
Contrary to the majority's view, defense counsel cannot make a reasonable choice as to strategy unless they have first conducted an adequate investigation into the law and facts, and any decision not to pursue a certain line of investigation must be reasonable under the circumstances (see Oliveras, 21 NY3d at 346-348; Wiggins, 539 US at 533, 536; Strickland, 466 US at 690-691). Here, however, there was no "strategic or other legitimate explanation[ ]" for counsel's failure to investigate defendant's mental health and substance use history given its possible relevance to defendant's mental state when he spoke to law enforcement (see Caban, 5 NY3d at 152). Therefore, counsel's decision not to undertake any investigation into these issues cannot be considered reasonable (see Wiggins, 539 US at 533, 536). As a consequence of these insufficiencies in the investigatory stage of the representation, counsel was unable to make an informed strategic decision as to which defense theory to pursue. These failures affected the fundamental fairness of the proceedings and deprived defendant of his right to meaningful representation.
Adequate investigation is all the more important when the defendant has a serious mental health diagnosis, as was the case here. The fact is that many individuals caught in the criminal legal system have serious mental health issues—as of September 2025, 22 percent of individuals in New York City jails were reported to have been diagnosed with a serious mental illness (see NYC Health + Hospitals Correctional Health Services, CHS Patient Profile for Individuals in the New York City Jail System [Oct. 16, 2025], https://hhinternet.blob.core.windows.net/uploads/2025/10/correctional-health-services-patient-profile-metrics-september-2025.pdf [last accessed June 5, 2026]). Given the impact of mental illness and long-term substance abuse on reasoning and behavior, it is often easy to mistake outward appearances as the result of rational—or simply misguided—thinking, unaffected by significant cognitive condition.
I agree with the majority's suggestion that counsel must undertake an investigation that is reasonable under the circumstances, but here, counsel unreasonably chose to ignore or discount information suggesting the need for further investigation into defendant's mental health conditions and substance use. Counsel knew that defendant had a history of serious mental illness and substance abuse. In fact, everyone knew, since defendant was candid about his diagnoses and drug use. Yet, counsel chose to base his defense strategy on his personal observations of and conversations with defendant without investigating this history, which would have led counsel to learn of defendant's insanity designation in a prior criminal matter. In some cases, counsel's observations of and consultation with the defendant will be enough, but not in this case. Once counsel became aware of defendant's mental health conditions and substance use—which may well have affected defendant's reasoning and beliefs during his interactions with law enforcement—it was incumbent upon counsel to investigate these matters, and not rely on his post-hoc observations of defendant. Only with that investigative information in hand could counsel determine a reasonable defense strategy to pursue. Accordingly, under the circumstances presented here, counsel was ineffective under our state standard for failing to conduct that threshold investigation.
I dissent.
Order affirmed. Opinion by Judge Troutman. Chief Judge Wilson and Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion.
Decided June 23, 2026

Footnotes

Footnote 1
This attorney only represented defendant at his arraignment.